BRENDA GAIL HEDRICK v. PPG INDUSTRIES, Self-Insured

No. COA96-1030

(Filed 20 May 1997)

**Workers' Compensation § 178 (NCI4th)— dystonia—trauma from accident as cause—sufficiency of medical testimony**

The Industrial Commission's findings of fact were supported by competent evidence and those findings supported the Commission's conclusion that plaintiff employee's work-related accident caused her to develop dystonia, a movement disorder, where the Commission, the sole judge of the credibility of a witness and the amount of weight to be given to testimony, relied on medical testimony that the dystonia was, within reasonable medical probability, related to trauma from a fall plaintiff sustained while working for defendant employer.

**Am Jur 2d, Workers' Compensation § 361.**

Appeal by defendant from opinion and award of the North Carolina Industrial Commission filed 19 July 1996. Heard in the Court of Appeals 30 April 1997.

*Snow & Skager, by James M. Snow, for plaintiff-appellee.*

*Brinkley, Walser, McGirt, Miller, Smith & Coles, by G. Thompson Miller, for defendant-appellant.*

MARTIN, John C., Judge.

Defendant appeals from an opinion and award of the Industrial Commission awarding plaintiff workers' compensation benefits for disability and medical expenses due to a movement disorder resulting from plaintiff's compensable injury by accident at work on 9 March 1993. The evidence presented at the hearing before the deputy commissioner tended to show that plaintiff sustained an injury while working for defendant when she fell backwards, hitting her buttocks and lower back, while attempting to pull a box of tubes. She was initially treated for a lumbosacral strain with medication and physical therapy. In plaintiff's initial assessment for physical therapy, the therapist noted that plaintiff stood with a forward pelvic tilt. She started to develop tremors in her head and neck and by late July, her tremors were so pronounced that her supervisor sent her to the nurses' station.

HEDRICK v. PPG INDUSTRIES

[126 N.C. App. 354 (1997)]

On 4 August 1993, a therapist at the Comprehensive Medical Rehabilitation Center reported that plaintiff "began demonstrating more noticeable tremors involving head, trunk, extremities. These tremors appear involuntary. They do not appear related to anxiety." Plaintiff was referred to Dr. Francis Walker of the Department of Neurology at the Bowman Gray School of Medicine, who ordered a MRI examination of her brain, cervical spine and thoracic spine, all of which were normal. Dr. Walker reported that plaintiff exhibited "very unusual body jerking", which he felt to be a psychogenic tremor due to stress.

Plaintiff subsequently sought treatment at North Carolina Memorial Hospital in Chapel Hill. She was evaluated by Dr. Imran Ali, a neurologist, who felt that her neurological examination was normal, and by Dr. L. Jarrett Barnhill, Associate Professor of Psychiatry and Director of the Developmental Neuropharmacology Clinic, who concluded that plaintiff's movement disorder was not psychological in origin and that her movement disorder was an unspecified type with dystonic qualities. Dr. Ali referred plaintiff to Dr. Stephen G. Reich, Assistant Professor and Chief Resident in the Department of Neurology at Johns Hopkins University, who noted that plaintiff had horizontal tremors of the head, involuntary movements of her mouth, and jerking and twisting motions of the upper trunk. Dr. Reich was of the opinion that plaintiff suffered from dystonia, a neurological condition of involuntary muscle spasms frequently causing twisting movements or abnormal postures. Plaintiff worked on light duty from 9 May 1993 until the middle of June. Afterwards, plaintiff alternated between light duty and medical leave until 2 September 1993 when she stopped working.

The deputy commissioner awarded plaintiff benefits for temporary total disability and medical compensation for her movement disorder. Defendant appealed to the Full Commission, which affirmed the deputy commissioner's decision. In its opinion and award dated 19 July 1996, the Commission found:

20. It is the opinion of Dr. Reich, to a reasonable degree of medical certainty, and the Full Commission finds as fact, that the plaintiff's dystonia was caused by the trauma plaintiff suffered in her accident of March 9, 1993. Dr. Reich based this conclusion on clinical observation, the medical evidence itself, and the temporal association between the trauma and the subsequent development of dystonia. The plaintiff's jerking of her head which started

within a month of the accident and was obvious by August, 1993, and her unusual forward-tilted posture noted in her medical records both were early signs of dystonia.

21. Dr. Reich anticipates, and the Full Commission so finds, that plaintiff's dystonia will be permanent, since almost all cases of dystonia in adulthood are permanent. . . . It is his opinion, and the Full Commission so finds, that, due to her dystonia, it would be very difficult for plaintiff to engage in any type of employment, especially factory work that would require hand and head coordination.

22. At the hearing before the Deputy Commissioner, the plaintiff's head, neck, and shoulders moved in what appeared to be an uncontrollable and involuntary fashion. Plaintiff also had a noticeable defect in her speech. Her voice modulates uncontrollably and her speech at times is slow and slurred.

23. Dr. Ali and Dr. Barnhill at UNC were the first physicians to diagnose plaintiff's movement disorder as one that was not of psychological origin, with dystonic qualities. Dr. Reich at Johns Hopkins gave a definite diagnosis for plaintiff's condition and formulated a treatment plan. The Full Commission finds that the evaluation and treatment rendered by these physicians was reasonably necessary.

. . .

25. The greater weight of the medical evidence establishes that the plaintiff's injury by accident on March 9, 1993, caused the subsequent development of her dystonia, a movement disorder, As a result of her dystonia, plaintiff has been unable to engage in gainful employment at least since September 2, 1993.

Based on these finding, the Commission concluded:

1. Plaintiff's accident of March 9, 1993 caused a lower and mid-back strain. The accident also caused the subsequent development of dystonia, a neurological condition which causes involuntary movement of plaintiff's head, neck and shoulders.

. . .

4. As a result of her dystonia, plaintiff has been temporarily totally disabled since September 2, 1993, and is entitled to compensation benefits at the rate of $317.89 per week from that date

forward for so long as plaintiff remains unable to return to gainful employment or until further order of the Commission.

On appeal, defendant argues that the Commission's award of medical compensation and benefits for temporary total disability cannot be sustained because the evidence does not support, within the required degree of reasonable probability, the Commission's findings that plaintiff's movement disorder was caused by the work-related accident of 9 March 1993. We disagree and affirm the Commission's decision.

The standard of review on appeal to this Court of an award by the Industrial Commission is whether there is any competent evidence in the record to support the Commission's findings of fact and whether these findings support the Commission's conclusions of law. *Sidney v. Raleigh Paving & Patching, Inc.*, 109 N.C. App. 254, 426 S.E.2d 424 (1993). The findings of fact made by the Commission are conclusive upon appeal when supported by competent evidence, even when there is evidence to support a contrary finding. *Morrison v. Burlington Industries*, 304 N.C. 1, 282 S.E.2d 458 (1981). In weighing the evidence, the Commission is the sole judge of the credibility of the witnesses and the weight to be given to their testimony, and the Commission may reject entirely any testimony which it disbelieves. *Russell v. Lowes Product Distribution*, 108 N.C. App. 762, 425 S.E.2d 454 (1993).

Defendant argues that because Dr. Reich admitted that there is no scientific proof that trauma causes dystonia, the evidence raises only a possibility that plaintiff's dystonia was caused by her compensable fall. Dr. Reich, a specialist in the field of movement disorders, testified that dystonia, a progressive functional disorder which involves involuntary muscle spasms frequently causing twisting movements or abnormal postures, generally has a slow onset. He testified that plaintiff had jerky and turning movements of the head, jerky and twisting movements of the upper trunk, involuntary puckering of the lips, and difficulty speaking. Dr. Reich further testified that "within reasonable medical probability that [plaintiff's dystonia] was related to the trauma which she experienced . . . on March 9, 1993 when she fell backwards at work while pulling a box." Although the cause of dystonia is unknown, Dr. Reich testified that he had observed cases where there is a temporal relationship between trauma and the subsequent development of dystonia, that such cases are substantiated in the medical literature, and "most people agree

that there is a relationship in some cases between antecedent trauma and the subsequent development of dystonia." He felt that some of plaintiff's earlier symptoms, such as her abnormal posture, could have been manifestations of dystonia, and that the time course between plaintiff's accident and the development of her dystonia suggests a "continuum here and that they are related." He testified that almost all cases of dystonia in adults tend to be permanent and felt that plaintiff's dystonia would be permanent and that it would be difficult for her to have almost any type of employment, particularly one that required eye, hand, and head coordination.

We hold that Dr. Reich's testimony was more than mere speculation or conjecture, as argued by defendant, and was sufficient to support the Commission's finding that the greater weight of the evidence showed a reasonable medical probability of a causal connection between plaintiff's fall and her movement disorder. *See Keel v. H & V, Inc.*, 107 N.C. App. 536, 421 S.E.2d 362 (1992) (causal connection may be shown by circumstantial evidence; absolute medical certainty not required). Accordingly, we conclude the Commission's findings of fact are supported by competent evidence and those findings support the Commission's conclusion that plaintiff's accident caused plaintiff to develop dystonia. The Commission's opinion and award is affirmed.

Affirmed.

Judges COZORT and McGEE concur.