**LOWERY v. DUKE UNIV.**

[167 N.C. App. 714 (2005)]

MELVIN LOWERY, Employee, Plaintiff v. DUKE UNIVERSITY, Employer,
SELF-INSURED, Defendant

No. COA04-62

(Filed 4 January 2005)

**Workers' Compensation— suitable employment—constructive
refusal**

> The Industrial Commission did not err in a workers' compensation case by finding that plaintiff utility worker did not constructively refuse suitable employment when he refused to attempt the job offered by defendant after the injury to plaintiff's right knee and leg, because: (1) competent evidence in the record supported the Commission's finding that plaintiff was not offered suitable employment when he was told that he could not use his cane while working; (2) the work plaintiff was instructed to do did not fall within the doctor's restrictions; and (3) plaintiff's testimony and the medical opinion of another doctor further supported the Commission's finding that the job offered to plaintiff was one he was physically unable to perform.

Appeal by defendant from Opinion and Award entered 6 October 2003 by the North Carolina Industrial Commission. Heard in the Court of Appeals 1 November 2004.

*Perry, Perry & Perry, P.A., by Robert T. Perry, for plaintiff-appellee.*

*Cranfill, Sumner & Hartzog, L.L.P., by Kari R. Johnson, for defendant-appellant.*

MARTIN, Chief Judge.

Defendant Duke University, self-insured, appeals from an opinion and award entered 6 October 2003 by the North Carolina Industrial Commission (hereinafter "Commission") awarding plaintiff benefits.

Defendant contends that the Commission erred when it reversed the opinion and award of the Deputy Commissioner and found that plaintiff did not constructively refuse suitable employment. Specifically, defendant asks this Court to find that there is no competent evidence to support the Commission's finding of fact that defendant-employer "failed to offer plaintiff a job that was within his

LOWERY v. DUKE UNIV.

[167 N.C. App. 714 (2005)]

restrictions and that he was physically able to perform." After careful consideration, we affirm the Industrial Commission.

Evidence before the Industrial Commission tended to show that plaintiff began working as a utility worker at Duke University in or around 1969. At the time of his injury he was assigned to work at Carr Gymnasium, where his job duties included mopping restrooms, locker rooms and hallways; vacuuming; removing trash; wiping benches; and cleaning lobbies, equipment rooms, the gym floor, a classroom, and a stairwell and landing. Plaintiff used dust mops, wet mops, brooms, a wet vac, a vacuum cleaner, cleaning chemicals and dust cloths.

Plaintiff suffers from poorly controlled Type II diabetes, has had complications from epilepsy in the past, and takes medication for depression. Plaintiff suffered a right knee injury as a child which resulted in his right leg being shorter than his left leg.

On 24 November 1999, plaintiff fell down some stairs while in the course of his employment and sustained an acute right quadriceps tendon rupture. Defendant accepted plaintiff's right knee injury as compensable and paid temporary total disability compensation pursuant to a Form 60, Employer's Admission of Employee's Right to Compensation, dated 28 April 2000.

On 6 December 1999, plaintiff underwent a quadriceps tendon repair procedure performed by orthopedic surgeon Lawrence Higgins, M.D. Following his surgery, plaintiff began using a cane due to right leg weakness to ensure he did not fall. On 11 April 2000, Dr. Higgins released plaintiff to return to light duty work for four weeks with a transition to full duty thereafter and continued physical therapy. Plaintiff returned to work with restrictions on 1 May 2000. Defendant-employer did not allow him to use his cane while working. Plaintiff attempted to work without his cane, but was evidently unsuccessful.

Dr. Carol Epling of Duke University Employee Occupational Health and Wellness Services took plaintiff out of work while he underwent additional physical and rehabilitation therapy. Dr. Epling referred plaintiff to Southwind Spine Rehabilitation Center to participate in a work transitioning program that plaintiff began on or about 23 May 2000. After completing physical therapy, plaintiff continued to suffer from chronic pain in his right knee and weakness of the right leg. There was also a significant atrophy of the right quadriceps.

After performing a functional capacity examination on 28 September 2000, Dr. Epling released plaintiff to return to modified housekeeping work on a trial basis with restrictions, including not kneeling or squatting and not lifting or pulling more than twenty pounds without assistance and no more than forty pounds under any circumstances.

Dr. Epling further noted that plaintiff "[m]ay have [sic] cane with him to work but not to use cane during work activities within restrictions previously written." She testified that "[i]f he did activities [compatible with] this very lengthy list of activities restrictions . . . his actual activities at the job would be quite restricted within these recommendations." She also opined that if plaintiff "didn't have a Duke job, then it would be difficult to find a job that would fit within those limitations." Dr. Epling was aware that plaintiff suffered fatigue, headaches, "and some other systemic symptoms that he attributed to poor glucose control." However, she admitted that when assessing plaintiff's functional capacity and determining work restrictions, she had failed to consider his diabetic condition. "My role in this clinic," she stated, "is to assess the injury status and to write relevant indicated activity limitations *for that injury*." (emphasis added).

Dr. Richard F. Bruch, an orthopedic surgeon, examined plaintiff on 27 April 2001 in connection with plaintiff's application for Social Security Disability benefits. It was Dr. Bruch's opinion that, some eighteen months after his surgery, plaintiff retained a fifteen percent (15%) permanent partial impairment rating to his lower right leg, and an additional five percent (5%) permanent partial impairment rating to the leg due to preexisting weakness attributable to the old injury. Dr. Bruch also opined, taking into consideration plaintiff's medical records, X-rays and his own physical examination of plaintiff, that he was more likely to fall than someone who had normal quadriceps muscle function and tone, and that plaintiff's use of a cane "was appropriate, either at home, out in public, or in the workplace."

"The standard of review for an appeal from an opinion and award of the Industrial Commission is limited to a determination of (1) whether the Commission's findings of fact are supported by any competent evidence in the record; and (2) whether the Commission's findings justify its conclusions of law." *Goff v. Foster Forbes Glass Div.*, 140 N.C. App. 130, 132-33, 535 S.E.2d 602, 604 (2000). If there is competent evidence to support the findings, they are conclusive on appeal even though there is evidence to support contrary findings. *Hedrick*

*v. PPG Industries*, 126 N.C. App. 354, 357, 484 S.E.2d 853, 856, *disc. review denied*, 346 N.C. 546, 488 S.E.2d 801 (1997). Furthermore, the evidence tending to support plaintiff's claim must be taken "in the light most favorable to plaintiff, and plaintiff is entitled to the benefit of every reasonable inference to be drawn from the evidence." *Adams v. AVX Corp.*, 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998). However, "findings of fact by the Commission may be set aside on appeal when there is a complete lack of competent evidence to support them." *Young v. Hickory Bus. Furn.*, 353 N.C. 227, 230, 538 S.E.2d 912, 914 (2000).

We also emphasize that " '[t]he Commission is the sole judge of the credibility of the witnesses and the weight to be given their testimony.' " *Dolbow v. Holland Industrial*, 64 N.C. App. 695, 697, 308 S.E.2d 335, 336 (1983), *disc. review denied*, 310 N.C. 308, 312 S.E.2d 651 (1984) (citation omitted). "Thus, the Commission may assign more weight and credibility to certain testimony than other." 64 N.C. App. at 697, 308 S.E.2d at 336. *See also Boles v. U.S. Air, Inc.*, 148 N.C. App. 493, 499, 560 S.E.2d 809, 813 (2002).

Defendant purports to bring forward twenty-four assignments of error. In defendant's brief, however, only one argument is advanced: "The Full Commission erred when it reversed the Opinion and Award of the Deputy Commissioner and found that plaintiff's refusal of employment at Duke was justified thereby entitling plaintiff to continuing benefits." Questions raised by assignments of error in the record on appeal, but not then presented and discussed in a party's brief, are deemed abandoned. N.C. R. App. P. 28(b)(6).

The scope of appellate review is thus limited to the Commissioner's finding of fact No. 23, and its conclusion of law No. 1.[1]

The Commission's finding of fact No. 23 reads in pertinent part:

Defendant-employer failed to offer plaintiff a job that was within his restrictions and that he was physically able to perform . . . .

---

1. Defendant further takes exception to finding of fact No. 21 which states, in pertinent part, "it was medically necessary for plaintiff to use his cane at all times due to his high risk of falling." Inasmuch as the Commission's conclusion of law that plaintiff was not offered suitable employment does not depend upon a finding that the cane was medically necessary, we need not inquire into whether the record supports the Commission's finding. Assuming, *arguendo*, that the cane was not medically necessary, the employment procured for plaintiff was nevertheless unsuitable.

LOWERY v. DUKE UNIV.

[167 N.C. App. 714 (2005)]

The Commission's conclusion of law No. 1 provides:

> On October 10, 2000,[2] defendant-employer offered plaintiff a job
> he was physically unable to perform. Plaintiff did not construc-
> tively refuse suitable employment without justification when he
> refused to attempt the job offered by defendant without the use
> of his cane. N.C.G.S. § 97-32.

Thus, we must consider (1) whether the record contains any compe-
tent evidence to support the Commission's finding of fact that defend-
ant failed to offer plaintiff a job that was within his restrictions and
that he was physically able to perform; and (2) whether the findings
of fact justify the Commission's conclusion of law that plaintiff did
not refuse suitable employment.

G. S. § 97-32 (2003) provides:

> If an injured employee refuses employment procured for him
> **suitable to his capacity** he shall not be entitled to any com-
> pensation at any time during the continuance of such refusal,
> **unless in the opinion of the Industrial Commission such
> refusal was justified.** (Emphasis supplied).

"The plain language of this statute requires that the proffered
employment be suitable to the employee's capacity. If not, it cannot
be used to bar compensation for which an employee is otherwise en-
titled." *McLean v. Eaton Corp.*, 125 N.C. App. 391, 393, 481 S.E.2d 289,
290 (1997); *see also Peoples v. Cone Mills Corp.*, 316 N.C. 426, 444-45,
342 S.E.2d 798, 810 (1986).

"The burden is on the employer to show that plaintiff refused
suitable employment." *Gordon v. City of Durham*, 153 N.C. App. 782,
787, 571 S.E.2d 48, 51 (2002). We have defined "suitable employment,"
in the context of G.S. § 97-32, as "any job that a 'claimant is capable
of performing considering his age, education, physical limitations,
vocational skills and experience.'" *Shah v. Howard Johnson*, 140
N.C. App. 58, 68, 535 S.E.2d 577, 583 (2000), *disc. review denied*,
353 N.C. 381, 547 S.E.2d 17 (2001). Once the employer shows, to the
satisfaction of the Commission, that the employee was offered suit-
able work, the burden shifts to the employee to show that his re-
fusal was justified. *See, e.g., Moore v. Concrete Supply Co.*, 149 N.C.
App. 381, 390, 561 S.E.2d 315, 320 (2002) (where a position consti-
tuted "make work" specially created for plaintiff, did not exist in the

---

2. Evidence of record indicates the actual date plaintiff returned to work was 12
October 2000.

ordinary marketplace, was never advertised to the public, had never previously existed and was never subsequently filled after being refused by plaintiff, plaintiff was justified in refusing the position even though the work was suitable in light of his physical limitations and restrictions).

Defendant argues that plaintiff's insistence upon using his cane while working constituted a constructive refusal to return to work. Alternatively, defendant contends that the work offered to plaintiff could have been performed adequately while plaintiff was using a cane, and his refusal of suitable work renders him ineligible to receive continuing compensation. After careful consideration, we reject defendant's arguments.

There is competent evidence in the record to support the Commission's finding that plaintiff was not offered suitable employment. Plaintiff reported to work on 12 October 2000, whereupon he was told he could not use his cane, and his supervisor, Michelle Logan, sent him home. Plaintiff testified before the Deputy Commissioner:

A. [My employer] told me that . . . I couldn't use the cane, but I can, you know, work and hold on to walls and things and work like that, but I told them I wasn't going to do that. You know, it's something, you know, like doing dishes and things. I could hold to the walls. I didn't think that was appropriate for me to do.

. . .

Q. Why didn't you think that was appropriate for you to do?

A. I shouldn't work, you know, holding on to walls and things, you know, holding on to desks and walls and things.

Q. So you wanted to do your job with your cane?

A. I wanted—I wanted to do my job without my cane, but I was afraid to do my job without my cane. I really didn't want to— I really didn't want to—you know, work with the cane, period. I wanted to work, period, but like I say, I was afraid to work without my cane.

Q. Now could you perform your job with your cane?

A. Well, no. Anybody with, you know, common sense couldn't— you know, couldn't perform my job with a cane in your hand.

How you going to work with a cane in your hand? But I tried, you know.

Plaintiff also testified that after completing his course of physical therapy, he continued to experience pain and weakness in his right leg. He stated that he fell three or four times while using the cane, and that he refused to work without his cane because he feared another serious fall.

Ms. Logan testified that the job of utility worker cannot be performed with a cane because the functions of utility worker require the use of both hands. "They can't use one hand to hold on to the cane and the other hand to mop or dust mop or run a machine or anything like that." She further testified that when plaintiff was discharged from physical therapy and returned to restricted work, it was her understanding that "he was not supposed to use the cane at that time." The work she asked plaintiff to do included "other options that he could use if he needed that clutch," such as "wall borders around the wall" inside the tennis building. She asked plaintiff to blow off an indoor tennis court using an electric leaf blower, and suggested that if he got tired "he could sit down on [the] benches and finish the court." Ms. Logan testified that janitorial duties ordinarily required standing on one's feet the entire shift, except for breaks, and that there is no position at Duke in janitorial or housekeeping services that would permit the employee to work while using a cane.

Plaintiff's testimony indicates that he did not understand the specific work restrictions Dr. Epling had given him: "The only thing I know, they put me on light duty work, but like I said, it ain't no light duty work out there to do."

We conclude the Commission did not err when it determined that plaintiff did not constructively refuse suitable employment. As the employer's own evidence shows, the work plaintiff was instructed to do did not fall within Dr. Epling's restrictions. Ms. Logan testified that she believed plaintiff could clean bathrooms, including "cleaning the sinks and toilets," even though his work restrictions stated he could do no kneeling or squatting. Dr. Epling testified that plaintiff would not be able to clean bathrooms insofar as that task required squatting or kneeling. Ms. Logan stated he should be able to "pull[] trash," even though the restrictions state that he must have assistance when lifting between 20 and 40 pounds, and that he must not lift more than 40 pounds. Plaintiff testified that he experienced great difficulty when he attempted to lift full trash bags from their

containers, and that he had to remove some of the trash from the bags before he could lift the bags.

Despite Dr. Epling's recommendation that plaintiff "may sweep and blow off tennis court but speed and endurance will progress with time," Dr. Epling was unfamiliar with the occupational demands of using an electric-powered leaf blower and at her deposition was unable to answer, to a reasonable degree of medical certainty, questions pertaining to whether or not plaintiff could work safely with a leaf blower, either with or without a cane.

The plaintiff's testimony and the medical opinion of Dr. Bruch further support the Commission's finding that the job offered to plaintiff was one he was physically unable to perform.[3] Accordingly, the findings of fact justify the Commission's conclusion of law that "[p]laintiff did not constructively refuse suitable employment."

For the foregoing reasons, the Opinion and Award of the Industrial Commission is affirmed.

Affirmed.

Judges McCULLOUGH and STEELMAN concur.

---

3. Because competent evidence of record supports the Commission's finding of fact that plaintiff was not offered suitable employment, the Commission need not have addressed whether plaintiff's rejection of employment was justified.