MARY JO EDGERTON, Employee, Plaintiff,
v.
WYTHE ADVANTAGE, Employer, Self-Insured, (NCME FUND c/o ISURITY, INC., Servicing Agent), Defendant.
No. COA09-1268.
Court of Appeals of North Carolina.
Filed: April 6, 2010.
This case not for publication
Clayton, Myrick, McClanahan & Coulter, P.L.L.C., by Robert D. McCLanahan, for plaintiff-appellant.
Orbock, Ruark & Dillard, P.A., by Barbara E. Ruark, for defendant-appellee.
BRYANT, Judge.
On 15 May 2007, plaintiff-employee Mary Jo Edgerton suffered an injury by accident while in the course and scope of her employment. Defendant-employer Wythe Advantage filed a Form 60 and paid employee temporary total disability benefits at a compensation rate of $511.98 from 15 May 2007 to 20 November 2007. Employer filed a Form 28 to terminate benefits effective 20 November 2007. Following a hearing, the deputy commissioner rendered an opinion and award on 31 December 2008, from which both parties appealed. In an opinion and award filed 17 July 2009, the Full Commission ordered employer to pay employee's expenses incurred due to the injury by accident and temporary total disability compensation at a rate of $512.96 per week from 15 May 2007 to 20 November 2007, with a credit for payments previously made. The Commission also determined that employer was not responsible for treatment of employee's osteoporosis. Employee appeals. As discussed below, we affirm.

Facts
In May 2007, employee had worked for employer as a realtor for several years. Employee was an independent contractor paid entirely by commissions earned as either a buyer's or seller's agent and received a Form 1099 for income tax purposes. In the 52 weeks prior to 15 May 2007, she earned $64,762.43 in commissions and was responsible for paying various expenses related to her work, including advertising, licensing, continuing education, vehicle and computer costs.
On 15 May 2007, while performing a home inspection, employee fell and suffered injuries, including fracturing a bone in her foot and fracturing and dislocating her left ankle. Employee was transported to the hospital and underwent surgery on her ankle, during which the surgeon noted severe osteoporosis. Following the surgery, employee was prescribed osteoporosis medication.
In her brief, employee makes four arguments: that the Commission erred in (I) using method five under N.C. Gen. Stat. § 97-2(5) to calculate her average weekly wage; (II) basing her average weekly wage on her net earnings; (III) not concluding that the first method under § 97-2(5) was the fairest method; and (IV) finding that she failed to establish that she continued to be disabled after 20 November 2007. We disagree and affirm.

Standard of Review
Our review of an opinion and award from the Industrial Commission is limited to determining whether competent evidence supports the Commission's findings of fact and whether those findings support the Commission's conclusions of law. Adams v. AVX Corp., 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998), reh'ing denied, 350 N.C. 108, 532 S.E.2d 522 (1999); see also Deese v. Champion Int'l Corp., 352 N.C. 109, 530 S.E.2d 549 (2000). Findings supported by competent evidence are conclusive on appeal even if there was evidence to support contrary findings. Hedrick v. PPG Industries, 126 N.C. App. 354, 357, 484 S.E.2d 853, 856 disc. review denied, 346 N.C. 546, 488 S.E.2d 801 (1997). Matters of statutory interpretation of the Workers' Compensation Act are reviewed de novo. Goodson v. P.H. Glatfelter Co., 171 N.C. App. 596, 605, 615 S.E.2d 350, 357, disc. review denied, 360 N.C. 63, 623 S.E.2d 582 (2005).

I, II
Employee argues that the Commission erred in using method five under N.C.G.S. § 97-2(5) to calculate her average weekly wage based on her net income. We disagree.
N.C.G.S. § 97-2(5) lists, in order of preference, five methods to calculate an employee's average weekly wage:
"Average weekly wages" shall mean [1] the earnings of the injured employee in the employment in which he was working at the time of the injury during the period of 52 weeks immediately preceding the date of the injury, including the subsistence allowance paid to veteran trainees by the United States government, provided the amount of said allowance shall be reported monthly by said trainee to his employer, divided by 52; [2] but if the injured employee lost more than seven consecutive calendar days at one or more times during such period, although not in the same week, then the earnings for the remainder of such 52 weeks shall be divided by the number of weeks remaining after the time so lost has been deducted. [3] Where the employment prior to the injury extended over a period of fewer than 52 weeks, the method of dividing the earnings during that period by the number of weeks and parts thereof during which the employee earned wages shall be followed; provided, results fair and just to both parties will be thereby obtained. [4] Where, by reason of a shortness of time during which the employee has been in the employment of his employer or the casual nature or terms of his employment, it is impractical to compute the average weekly wages as above defined, regard shall be had to the average weekly amount which during the 52 weeks previous to the injury was being earned by a person of the same grade and character employed in the same class of employment in the same locality or community.
[5] But where for exceptional reasons the foregoing would be unfair, either to the employer or employee, such other method of computing average weekly wages may be resorted to as will most nearly approximate the amount which the injured employee would be earning were it not for the injury
N.C.G.S. § 97-2(5) (2009). Whether the results reached are fair and just to both parties is a question of fact for the Commission to determine. Hendricks v. Hill Realty Group, Inc., 131 N.C. App. 859, 862, 509 S.E.2d 801, 803 (1998), disc. review denied, 350 N.C. 379, 536 S.E.2d 73 (1999).
Here, in findings 10 and 13, and in conclusions 3 and 4, the Commission determined that using the first method would result in an average weekly wage that would be inflated and unfair to employer because employee's gross commissions do not accurately reflect her earnings. Instead, the Commission used the fifth method and deducted employee's work-related expenses from her gross commissions to determine her net earnings over the fifty-two weeks preceding her injury.
Employee contends she was entitled to calculation of her average weekly wage using method one because she continued to incur the work-related expenses during the period of her disability. Thus, she argues it would not have been unfair to employer to make the average weekly wage calculation based on her gross commissions.
Unchallenged finding 9, which is binding on appeal, states:
9. Plaintiff is a Real Estate Agent and receives payment on a 1099. Plaintiff filed income tax returns that included a Schedule C. Plaintiff's Schedule C shows various deductions that she takes from the gross commissions she receives. Plaintiff uses the Schedule C to determine her net income. Plaintiff then reports the net income on the Form 1040 which is [the] amount used to determine her tax liability.
We conclude that this finding and other competent evidence in support of that finding, including employee's 2006 and 2007 tax forms and her own testimony that she pays taxes on her commissions less work-related expenses, support the Commission's findings 10 and 13. We have previously approved the use of net income to determine average weekly wage where appropriate. See, e.g., Christian v. Riddle & Mendenhall Logging, 117 N.C. App. 261, 450 S.E.2d 510 (1994) (approving use of net income where a logging subcontractor lacked a true weekly wage and had high wage earnings as well as high expenses). Further, while the Commission is not required to deduct expenses incurred by an employee in determining average weekly wage under method five, it may do so in order to produce a result which is fair to both the employer and employee. Craft v. Bill Clark Constr. Co., 123 N.C. App. 777, 780-81, 474 S.E.2d 808, 810-11, disc. review denied, 345 N.C. 179, 479 S.E.2d 203 (1996); Baldwin v. Piedmont Woodyards, Inc., 58 N.C. App. 602, 604, 293 S.E.2d 814, 816 (1982). Here, we determine that the Commission's findings 9, 10 and 13 support their conclusions 3 and 4, that using method five to calculate employee's average weekly wage was necessary to produce a result fair and just to both employer and employee. These arguments are overruled.

III
Employee next argues that the first method under N.C.G.S. § 97-2(5) is the most fair way to calculate her average weekly wage. We disagree.
Employee contends that because some of her work-related expenses continued even during her disability, method one was the most fair way to calculate her average weekly wage. Our duty is not to re-weigh the evidence before the Commission or make our own determinations. Hedrick, 126 N.C. App. at 357, 484 S.E.2d at 856. Findings supported by competent evidence are conclusive on appeal even if there was evidence to support contrary findings. Id. As discussed above, competent evidence supported the Commission's decision to employ method five for fairness. This argument is overruled.

IV
Employee also argues that no competent evidence supports the Commission's finding 15, that she failed to establish that she continued to be disabled after 20 November 2007. We disagree.
In proving disability, "[t]he burden is on the employee to show that he is unable to earn the same wages he had earned before the injury, either in the same employment or in other employment." Russell v. Lowes Prod. Distrib., 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993). Unchallenged finding 8 states:
8. Since November 2007, plaintiff has continued to list and sell property for Caldwell Banker and has earned commissions in January 2008 in the amount of $9,252,81, in February 2008 in the amount of $6,487.29, in March 2008 in the amount of $1,874.88, and in April 2008 in the amount of $9,196.64. Plaintiff has continued to list houses thereafter.
On 20 November 2007, plaintiff's doctor released her to return to work as tolerated, and plaintiff did so. Plaintiff admitted at the hearing that the real estate market was slower following her return to work than beforehand. Plaintiff's gross commissions averaged $4876.83 per month in 2006 and $5,275.52 per month in 2007. Employee's average monthly commission for the first four months following her return to work was $6,702.91, a amount greater than before her injury despite the slower real estate market. This competent evidence supports the Commission's finding 15. This argument is overruled.
Affirmed.
Judges STEELMAN and BEASLEY concur.
Report per Rule 30(e).