DIETZ, Judge.
Plaintiff Rexford D. Hardison appeals from the Industrial Commission's opinion and award denying his workers' compensation claims. Initially, Defendants Goodyear Tire and Rubber Company and Liberty Mutual Insurance accepted and began paying Hardison's claim, which involved an umbilical hernia. Hardison told Defendants that the hernia occurred at work and that he had never had any previous hernias or similar injuries.
Hardison later retired and amended his claim to request compensation for foot and leg problems that he said were an occupational disease. Defendants obtained Hardison's neurology records concerning his foot and leg issues and discovered-for the first time-medical notes indicating that Hardison already suffered from an umbilical hernia before the date of his purported hernia injury, and that Hardison told his doctor that "[h]e plans to have surgery on the hernia after he retires."
After discovering this evidence, Defendants moved to set aside their acceptance of the hernia claim. The Commission granted that motion based on the newly discovered evidence and Hardison's misrepresentations to Defendants that he had never previously suffered from hernia issues. The Commission also held that Hardison's foot and leg issues were not a compensable occupational disease.
As explained below, we affirm the Industrial Commission's Opinion and Award. The Commission properly set aside Defendants' acceptance of compensability because Defendants could not have discovered the unrelated neurology records documenting Hardison's pre-existing hernia in the exercise of due diligence. Thus, the Commission had inherent authority to set aside the acceptance of compensability based on newly discovered evidence and Hardison's misrepresentations that he had not previously suffered from hernia problems.
The Commission also properly concluded that Hardison's foot and leg problems were not an occupational disease. Hardison failed to show his job duties caused or significantly contributed to his foot and leg problems or that his job placed him at increased risk of developing those conditions. His neurologist testified that there are many possible causes of his foot and leg problems, that these were issues common to the general public, and that he was not able to testify more likely than not those foot and leg issues had any particular cause.
Finally, the Industrial Commission did not abuse its discretion in declining to sanction Defendants for unilaterally terminating payments without first filing a Form 24. Hardison correctly points out that Defendants wrongly ceased payments without following the proper procedure. But Defendants admitted their mistake and Hardison suffered no harm because the Commission concluded he was never entitled to benefits in the first place. Thus, the Commission was within its broad discretion to decline to sanction Defendants for their wrongful conduct.
Facts and Procedural History
Defendant Goodyear Tire and Rubber Company hired Plaintiff Rexford D. Hardison as a tire builder in 1976. According to Hardison, on 22 December 2011, he was lifting a liner roll when he felt pain in his abdomen. Hardison testified that after he felt this pain he noticed a golf ball sized protrusion in his navel area. He was unable to continue working and his supervisor sent him to Goodyear's on-site medical facility. From there, Hardison was immediately sent to the hospital emergency room where he was diagnosed with an umbilical hernia.
That same day, Hardison filled out an initial incident report, notifying Goodyear of his umbilical hernia. In the report, Hardison denied that he had ever had a previous hernia or similar condition. Hardison then filed a claim for workers' compensation.
Nancy Talavera, an adjuster for Defendant Liberty Mutual Insurance, handled Hardison's workers' compensation claim. In her investigation of Hardison's claim, Talavera reviewed the workers' compensation submissions, the incident report, and the medical treatment notes from the on-site medical facility. She obtained a medical authorization signed by Hardison, releasing "all medical information regarding his abdomen[.]" Talavera also interviewed Hardison. During the interview, Talavera asked Hardison "if he had any pre-existing hernias, if he had ever in his life been treated for any hernia condition" and "asked if he had any medical conditions at all." Hardison denied having "any previous or pre-existing hernia " or "prior treatment for hernias." Hardison told Talavera that "he had issues that were pre-existing and longstanding of his legs and toes where his legs swell and he has pain in his toes, that he has seen pain management for it, he called it neuropathy."
Talavera did not seek medical records relating to Hardison's neuropathy because "[h]e told me it was a long-standing pre-existing condition," "at the time he did not allege or relate it to work-to being work-related," and she "would have no reason to request medical records on a condition that was not relevant ... to a hernia." After completing the investigation of Hardison's hernia claim, Defendants filed a Form 60 on 18 January 2012, accepting Hardison's hernia as a compensable injury.
On 1 February 2012, Hardison retired from employment with Goodyear. Defendants stopped paying Hardison temporary total disability benefits on 20 February 2012, although the company did not first submit an application to terminate or suspend those payments through Form 24. Defendants conceded that unilaterally ceasing payments without first filing a Form 24 was improper. Nancy Talavera testified that Defendants' failure to file a Form 24 before stopping the payments "certainly wasn't intentional" and "that under the circumstances, with [Hardison's] retirement and the fact that he had been released from doctor's care, I thought it was appropriate to stop benefits based on those facts and circumstances at the time."
On 19 April 2012, Hardison filed a Form 33 requesting a hearing "[t]o determine benefits due" for "bilateral feet & legs swelling ." This was the first notice Defendants received of any workers' compensation claim regarding issues with Hardison's feet and legs. On 25 July 2012, Hardison amended his initial workers' compensation claim to add a claim for "bilateral feet & leg swelling" due to the "repetitive nature of his job" in addition to his umbilical hernia claim.
After receiving notice of this added claim, Defendants obtained medical records from Hardison's neurologist, Dr. Nailesh Dave, who had been treating Hardison for the pain and swelling in his feet and legs. Included in the records from Dr. Dave was a note from an 11 November 2011 examination indicating that Hardison had "an umbilical hernia " and "[h]e plans to have surgery on the hernia after he retires." Based on this newly obtained evidence of a pre-existing hernia, Defendants moved to set aside their earlier acceptance of that claim.
On 5 June 2012, Defendants' counsel sent a letter to Dr. Dominic Storto, the surgeon who had treated Hardison's umbilical hernia, requesting his opinion regarding Hardison's work restrictions. Defendants sent Hardison's counsel a copy of the letter at the same time. Dr. Storto responded that "Mr. Hardison may resume unrestricted activity," but "will always be vulnerable to re-herniating and ideally should perform work that does not involve heavy lifting."
Hardison's claims were heard before Deputy Commissioner Melanie Wade Goodwin on 29 November and 18 December 2012. The Industrial Commission accepted into evidence the depositions of Dr. Dominic Storto, the surgeon who treated Hardison's hernia, and Dr. Nailesh Dave, the neurologist who treated Hardison's foot and leg swelling and neuropathy.
Dr. Dave testified that bilateral foot and leg swelling could be caused by "systemic illness, like heart failure " or arthritis, from which Hardison suffers. When asked if Hardison's job duties put him at increased risk of swelling and neuropathy, Dr. Dave stated that "the job itself would not cause nerve damage, but if there is underlying nerve damage," it can "make the problem worse." Dr. Dave also testified that there are many possible causes of neuropathy and that he was "not able to testify more likely than not that the neuropathy is from one cause or another." Dr. Dave also testified that Hardison's conditions were common to the general public.
On 15 January 2014, the Deputy Commissioner filed an opinion and award, setting aside Defendants' acceptance of the workers' compensation claim under Form 60 and denying Hardison's workers' compensation claims. The Deputy Commissioner concluded that Defendants were entitled to have the Form 60 set aside on the grounds of "newly discovered evidence" and "fraud and/or misrepresentation." The Deputy Commissioner also concluded that the claim "is not compensable because it pre-existed the December 22, 2011 incident." Finally, the Deputy Commissioner concluded that Defendants did not improperly terminate Hardison's benefits following his retirement because the award of benefits ultimately was vacated.
With respect to Hardison's foot and leg edema, the Deputy Commissioner held that those injuries are not compensable because "Dr. Dave's testimony was equivocal regarding causation" and Hardison did not meet his burden of proving that his job duties placed him at increased risk of developing the condition or that his job caused or significantly contributed to the development of the condition.
Hardison appealed to the Full Commission. The Full Commission filed its opinion and award on 15 September 2014, affirming the Deputy Commissioner's decision on the same grounds identified in the Deputy Commissioner's opinion and award. The Full Commission also rejected Hardison's argument that Defendants engaged in impermissible ex partecontact with Dr. Storto, noting that Defendants sent a copy of their 5 June 2012 letter to Hardison's counsel and therefore complied with the requirements of N.C. Gen.Stat. § 97-25.6. The Full Commission ordered both parties to pay $110 in costs. Hardison timely appealed.
Analysis
I. Industrial Commission's Authority to Set Aside Form 60
Hardison first argues that the Industrial Commission erred in setting aside Defendants' initial acceptance of the workers' compensation claim through Form 60. As explained below, the Industrial Commission was within its discretion to set aside the acceptance of the claim based on Plaintiff's misrepresentations and Defendants' newly discovered evidence.
An "employer's filing of a Form 60 is an admission of compensability" and "the employer's payment of compensation pursuant to the Form 60 is an award of the Commission." Perez v. American Airlines/AMR Corp.,174 N.C.App. 128, 135, 620 S.E.2d 288, 293 (2005). As a result, the acceptance of a workers' compensation claim ordinarily cannot be withdrawn by the employer or altered by the Industrial Commission.
Nevertheless, the Industrial Commission "has inherent power, analogous to that conferred on courts by Rule 60(b)(6), in the exercise of supervision over its own judgments to set aside a former judgment when the paramount interest in achieving a just and proper determination of a claim requires it." Ammons v. Goodyear Tire & Rubber Co.,209 N.C.App. 741, 744, 708 S.E.2d 127, 128 (2011). This Court has previously held that fraud, misrepresentations, and newly discovered evidence all can justify setting aside an award under Form 60. See Hogan v. Cone Mills Corp.,315 N.C. 127, 139, 337 S.E.2d 477, 484 (1985) ; Wall v. N.C. Dep't of Human Res.,99 N.C.App. 330, 331-32, 393 S.E.2d 109, 110 (1990). To obtain relief on the basis of newly discovered evidence, the defendant must "show that when the award was entered evidence material to the case existed that he did not learn about, through due diligence, until later." Id.at 332, 393 S.E.2d at 110.
Here, the Industrial Commission "exercise[d] its inherent power to set aside the Form 60," concluding that "the paramount interest in achieving a just and proper determination of a claim requires it." The Commission based its ruling on "newly discovered evidence" that "was material to the hernia claim" and on Hardison's "misrepresentation to Defendants regarding his preexisting hernia."
The Industrial Commission's conclusions are supported by its findings of fact, which, in turn, are supported by the record. The Commission found that medical records from Hardison's neurologist and pain management specialist, who treated Hardison for leg and foot conditions, described a pre-existing umbilical hernia ; that Hardison did not allege his leg and foot conditions were work-related until after Defendants had filed their Form 60 accepting compensability for his hernia ; and that Defendants would have been "unable to obtain Plaintiff's medical records from a medical provider related to his bilateral leg and foot swelling and pain because, based on the information that Plaintiff had provided to Defendants, such records were not relevant to Plaintiff's claim for a hernia."
The record supports these findings. When interviewed by Defendants, Hardison denied having "any previous or pre-existing hernia " or "prior treatment for hernias." Hardison told Defendants that "he had issues that were pre-existing and longstanding of his legs and toes where his legs swell and he has pain in his toes, that he has seen pain management for it, he called it neuropathy." Hardison never indicated that there was any connection between his hernia and his foot and leg problems, and there is none. Thus, Defendants had no basis to request these unrelated neurology records in their investigation of his hernia claim.
This case is readily distinguishable from the cases on which Hardison relies, where the employer failed to diligently conduct its investigation. See Spivey v. Wright's Roofing,--- N.C.App. at ----, 737 S.E.2d 745, 749 (2013) ; Kennedy v. Minuteman Powerboss,221 N.C.App. 245, 725 S.E.2d 923 (2012) ; Higgins v. Michael Powell Builders,132 N.C.App. 720, 726, 515 S.E.2d 17, 21 (1999). Here, for the reasons discussed above, competent evidence supports the Industrial Commission's finding that a diligent investigation of Hardison's hernia claim would not have included review of the unrelated medical records of Hardison's neurology specialist-particularly in light of Hardison's false statements that he had not had any previous hernias.
In sum, the Industrial Commission had the authority to set aside Defendants' Form 60 on the basis of newly discovered evidence and Hardison's misrepresentations.
II. Commission's Denial of Occupational Disease Claim
Hardison also challenges the Industrial Commission's rejection of his occupational disease claim for bilateral foot and leg edema and neuropathy. For the reasons discussed below, we find no error in the Commission's findings and conclusions on this issue.
An "occupational disease" is defined by the Workers' Compensation Act as "[a]ny disease ... which is proven to be due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation or employment, but excluding all ordinary diseases of life to which the general public is equally exposed outside of the employment." N.C. Gen.Stat. § 97-53(13) (2013). "The burden is on plaintiff to show that he suffered a compensable occupational disease under N.C. Gen.Stat. 97-53(13)." Nix v. Collins & Aikman Co.,151 N.C.App. 438, 443, 566 S.E.2d 176, 179 (2002). Our Supreme Court explained the elements of an occupational disease claim in Rutledge v. Tultex Corp./Kings Yarn,308 N.C. 85, 301 S.E.2d 359 (1983).
In Rutledge,the Court explained that
For a disease to be occupational under G.S. 97-53(13) it must be (1) characteristic of persons engaged in the particular trade or occupation in which the claimant is engaged; (2) not an ordinary disease of life to which the public generally is equally exposed with those engaged in that particular trade or occupation; and (3) there must be a causal connection between the disease and the [claimant's] employment.
Rutledge,308 N.C. at 93, 301 S.E.2d at 365 (internal quotation marks omitted). "[T]he first two elements are satisfied if ... the employment exposed the worker to a greater risk of contracting the disease than the public generally." Id.at 93-94, 301 S.E.2d at 365. "[T]he third element of the Rutledgetest" is "met where the [plaintiff] can establish that the employment caused him to contract the disease, orwhere he can establish that it significantly contributed to or aggravated the disease." Chambers v. Transit Mgmt.,360 N.C. 609, 613, 636 S.E.2d 553, 556 (2006).
"[E]vidence tending to show that the employment simply aggravated or contributed to the employee's condition goes only to the issue of causation." Id.The employee must also "satisfy the remaining two prongs of the Rutledgetest by establishing that the employment placed him at a greater risk for contracting the condition than the general public." Id.Expert medical testimony is not competent evidence on the issue of causation when it is "based merely upon speculation and conjecture." Young v. Hickory Bus. Furniture,353 N.C. 227, 230, 538 S.E.2d 912, 915 (2000). "In order to be sufficient to support a finding that a stated cause produced a stated result, evidence on causation must indicate a reasonable scientific probability that the stated cause produced the stated result." Seay v. Wal-Mart Stores, Inc.,180 N.C.App. 432, 436, 637 S.E.2d 299, 302 (2006). Rutledge"precludes recovery where a claimant cannot meet all three well-established requirements for proving an occupational disease." Futrell v. Resinall Corp.,151 N.C.App. 456, 460, 566 S.E.2d 181, 184 (2002), aff'd per curiam,357 N.C. 158, 579 S.E.2d 269 (2003).
Here, the Industrial Commission concluded that "Dr. Dave did not testify to a reasonable degree of medical certainty that Plaintiff's job building tires for Defendant-Employer significantly contributed to or was a significant causal factor in the development of Plaintiff's bilateral lower extremity conditions." The Commission also concluded that "Plaintiff has also not proven by the preponderance of the evidence in view of the entire record that Plaintiff's job building tires for Defendant-Employer placed him at increased risk beyond that of the general public of developing bilateral foot and leg edema and nerve damage/neuropathy." As a result, the Commission denied Hardison's claim for benefits under N.C. Gen.Stat. § 97-53(13).
We review the Commission's conclusions to determine whether they are supported by its findings of fact. Richardson v. Maxim Healthcare/Allegis Grp.,362 N.C. 657, 660, 669 S.E.2d 582, 584 (2008). And its findings of fact are conclusive if supported by competent evidence, even if there is evidence in the record that would support a contrary finding. Hedrick v. PPG Indus.,126 N.C.App. 354, 357, 484 S.E.2d 853, 856 (1997).
Here, the Commission made findings of fact that there are multiple possible causes for Hardison's foot and leg conditions, including other medical problems from which he suffers, such as arthritis or heart failure. The Commission found that "Plaintiff's job activities did not increase Plaintiff's risk of developing arthritis." The Commission further found that there are multiple possible causes of neuropathy, that "Dr. Dave was unable to testify more likely than not that Plaintiff's neuropathy was from one cause or another," and that "the job itself would not cause the nerve damage" but could "make the problem worse." Finally, the Commission found that "Dr. Dave did not provide a direct answer" as to whether Hardison's "job duties were a significant contributing factor to the development of the neuropathy and bilateral foot pain and ankle edema." These findings support the conclusion that Hardison failed to meet his burden of proving causation and increased risk, both required elements of an occupational disease claim.
The Commission's findings are supported by Dr. Dave's testimony. Dr. Dave testified that multiple medical conditions from which Hardison suffers can cause foot and leg swelling and pain. Dr. Dave testified that there are multiple causes for neuropathy, that it is "multifactorial," and that he was "unable to testify more likely than not that the neuropathy is from one cause or another." When asked if he "would agree more likely than not that these-bilateral leg and foot edema is related to the other conditions, such as the heart failure and/or kidney disease, that Mr. Hardison is suffering from," Dr. Dave responded, "Can be, yes." Dr. Dave concluded that
I cannot pinpoint where the neuropathy's coming from. It could be medical conditions. But the recurrent activity, trauma, arthritis is part of that swelling and pain in the legs. The swelling can be from the medical condition, but it could be part of the localized arthritic condition can be triggered or more rapidly enhanced or progressed with the job description or with the job-what he was doing.
He also noted that "arthritis is a condition common to the general public" and that Hardison's job duties "didn't increase his risk of developing arthritis." These facts, taken together, are competent evidence supporting the Commission's findings.
In sum, the Industrial Commission's conclusion that Hardison failed to show his foot and leg problems were a compensable occupational disease is supported by its findings of fact, which, in turn, are supported by competent evidence in the record. Accordingly, we hold that the Commission did not err in denying Hardison's occupational disease claim.
III. Termination of Plaintiff's Benefits Without Filing Form 24
Hardison next argues that the Commission erred by failing to sanction Defendants for their improper termination of his workers' compensation benefits. We review the Commission's decision not to impose sanctions for abuse of discretion. See Bennett v. Sheraton Grand,186 N.C.App. 250, 257, 650 S.E.2d 660, 665 (2007). As explained below, the Industrial Commission did not abuse its broad discretion in opting not to impose any sanctions.
It is undisputed that Defendants improperly terminated Hardison's workers' compensation benefits on 20 February 2012. Defendants unilaterally ceased making payments without first filing a Form 24, the appropriate procedural method to terminate payments. But, as explained above, the Industrial Commission later set aside that award of compensation because of Hardison's misrepresentations and Defendants' newly discovered evidence. Thus, Defendants' improper termination of benefits did not cause any actual harm to Hardison because he was never entitled to any benefits in the first place.
Moreover, Defendants acknowledged their mistake and the claims handler for this case file testified that her failure to file the necessary paperwork "certainly wasn't intentional." In light of these facts, the Industrial Commission acted well within its broad discretion in declining to sanction Defendants.
IV. Defendants' Communication with Dr. Storto
Hardison next argues that Defendants' 5 June 2012 letter to Dr. Dominic Storto, the doctor who treated Hardison's hernia, was an improper ex partecommunication. As a result, Hardison contends that Dr. Storto's medical opinion was tainted and should have been excluded. We disagree.
Hardison relies on Salaam v. N.C. Dep't of Transp.,122 N.C.App. 83, 87-88, 468 S.E.2d 536, 538-39 (1996), and Crist v. Moffatt,326 N.C. 326, 336, 389 S.E.2d 41, 47 (1990), for the proposition that defendants may not engage in ex partecommunication with a plaintiff's physician without the plaintiff's consent. But both Salaamand Cristwere decided before the enactment of N.C. Gen.Stat. § 97-25.6 in 2005. Section 97-25.6 provides that "[a]n employer may communicate with the employee's authorized health care provider in writing, without the express authorization of the employee, to obtain relevant medical information not available in the employee's medical records." N.C. Gen.Stat. § 97-25.6(c)(2) (2013). It further states that "[t]he employer shall provide the employee with contemporaneous written notice of the written communication."Id.
Here, Defendants sent a letter to Dr. Storto and copied Hardison's counsel. The letter was a written communication and the copy sent to Hardison's counsel constituted "contemporaneous written notice" as required by N.C. Gen.Stat. § 9725.6(c)(2). Because Defendants complied with the statutory procedure, Salaamand Cristare inapplicable and Defendants' communication with Dr. Storto was proper.
V. Constitutionality of Assessment of Costs
Finally, Hardison argues that the Industrial Commission's practice of assessing costs equally against both parties violates Hardison's due process and equal protection rights because it imposes court costs on him without providing a means to be excused in forma pauperis.We lack jurisdiction to consider this issue.
"Where a party appeals a constitutional issue from the Commission and fails to file a petition for certiorari or fails to have the question certified by the Commission, this Court is without jurisdiction." Myles v. Lucas McCowan Masonry,183 N.C.App. 665, 665, 645 S.E.2d 143, 143 (2007). Hardison did not raise this issue before the Commission, did not move the Commission to certify that question for decision by this Court, and did not petition for a writ of certiorari from this Court. As a result, we lack jurisdiction to consider Hardison's constitutional argument.
Conclusion
For the reasons discussed above, we affirm the Industrial Commission's opinion and award denying Hardison's workers' compensation claims.
AFFIRMED.
Chief Judge MCGEE and Judge HUNTER, JR. concur.
Report per Rule 30(e).
Opinion
Appeal by plaintiff from opinion and award entered 15 September 2014 by the North Carolina Industrial Commission. Heard in the Court of Appeals 20 April 2015.