JOHN WESLEY WARREN v. DIXON AND CHRISTOPHER COMPANY, INC. AND GLOBE INDEMNITY COMPANY.

(Filed 18 May, 1960.)

1. **Master and Servant § 1— Contract of employment held to have been completed in this State.**

   Where a resident contractor, obligated to employ union men from a local union in this State, has its foreman on a job in another state call on the union's manager for workers skilled in certain lines, and the manager calls a resident worker to the union office here and gives him a referral slip, which entitles the employee to travel and reporting time if the employer rejects him because work is not available, and the employee takes the referral slip to the foreman on the job outside the state, and enters upon the job there, *held* the act of the employee in reporting to the union office in this State, accepting the referral slip and starting upon the trip to the job, constitutes an acceptance of the offer of employment, so that the contract of employment is made and completed in this State.

2. **Master and Servant § 83—**

   Where the evidence is sufficient to support findings of the Industrial Commission that the contract of employment was made in this State and that the contract was not expressly for services exclusively outside the State, the North Carolina Industrial Commission correctly exercises jurisdiction over a claim of the employee for injuries resulting in the performance of the work.

3. **Master and Servant § 94—**

   Where the findings of fact by the Industrial Commission are sufficient predicate for its award, the award will not be disturbed even though another finding, immaterial to the decision, is not supported by any evidence.

APPEAL by defendants from *Crissman, J.,* September 28, 1959 Civil Term, GUILFORD Superior Court (Greensboro Division.)

This proceeding originated as a compensation claim before the North Carolina Industrial Commission. John Wesley Warren suffer-

ed an accident while working as a pipe fitter for Dixon and Christopher, Inc., on a construction job at Clarksville, Virginia. The first hearing was held by Deputy Commissioner Thomas in Durham, North Carolina, on July 28, 1958. The parties stipulated that John Wesley Warren and Dixon and Christopher, Inc., on and prior to September 23, 1956, were subject to and bound by the provisions of the North Carolina Workmen's Compensation Act; that Globe Indemnity Company was the compensation insurance carrier; that the claimant was regularly employed by Dixon and Christopher, Inc., in the State of Virginia at an average weekly wage of $173.25; that he was injured in Mecklenburg County, Virginia, on September 23, 1956. "Following said injury parties entered into an agreement on Commission's form 21 . . . by the terms of which compensation at the rate of $32.50 per week was paid for the period October 10, 1956, to October 17, 1956, and from March 27, 1957, to July 30, 1957, in the total sum of $617.50."

The evidence before the hearing commissioner disclosed that Dixon and Christopher, Inc., is a corporation engaged in the plumbing, heating, air conditioning, and other branches of the pipe fitting industry, with its principal office in Greensboro, North Carolina. Workers in the pipe fitting trade are organized in an association of local unions whose territorial jurisdiction does not overlap. The contractor and local union No. 640 located at Greensboro, North Carolina, entered into a working agreement whereby the contractor agreed to employ members of the union. The agreement related to working conditions, wages, etc. It provided: "Failure of Local Union . . . to furnish Journeymen Mechanics at the request of the Contractors within 48 hours; Saturdays, Sundays and Holidays excluded shall give the Contractors the right and privilege of hiring men at their own discretion."

On and prior to September, 1956, the employer, Dixon and Christopher, Inc., was carrying on two projects at Clarksville, Virginia, and one at Camp Butner, North Carolina. The projects were within the territorial jurisdiction of Local Union No. 585, Durham, North Carolina. That union and the employer entered into an agreement to be bound by the terms of the contract between Union No. 640 and the employer.

In 1956, Paul Whitaker was business manager of Local Union No. 585, Durham, North Carolina. He testified: "My primary function is . . . referring men to jobs as the contractors call in for them, job referrals and job placements. . . . Mr. Waynick (contractor's representative at Clarksville, Virginia) called me . . . and informed me that his company, Dixon and Christopher, had a contract for some

renewal work to be done on the plant site of the Clarksville job. . . . As to the procedure followed in referring men to the job, I received a call from the company representative calling for men. . . . He said, 'I need four men, two welders and two fitters.' I in turn selected those men and sent them to the company representative on that job, with an introductory slip, showing his social security number, effective date, his name, and signed and sealed by myself as business manager. . . . I selected Mr. Warren . . . and told him I had a call for fitters on the Clarksville job. He in turn comes by the office and picks up his introductory slip to the company representative. . . . In the event Mr. Warren had reported to the job and had not gone to work for Dixon and Christopher, he would have been entitled to two hours reporting time and one hour's travel time. . . . As to any terms of employment left unsettled for the employees themselves to arrange with the company, the employees have no direct connection with the company at all in so far as working agreement is concerned . . . all the dealings they have with the company are through me . . . Mr. Burnette called . . . and told me . . . 'I need so many men at Clarksvill,' I gave Mr. Warren an introductory slip to Mr. Burnette on the Clarksville job. . . . Mr. Warren could have reported to the Clarksville job and have been sent to Elizabeth City as far as I was concerned. . . . They did have a job . . . at Camp Butner and he could have been sent to the Butner job without my ever knowing about it."

The claimant testified that he is 61 years old, resides in Durham, North Carolina; that he was a member of the pipe fitters union No. 585, Durham. Mr. Whitaker called him to the union office in Durham, gave him a referral slip to Dixon and Christopher which he carried to Clarksville and presented to the foreman on the job. He went to work and while at work was injured. "As to whether I knew I was going to work on that job only when I went to work in Clarksville, Virginia, no, sir, not necessarily, if they had had other jobs I could have worked on it if it had been in my jurisdiction. . . . I worked on two different jobs in Clarksville. . . . I could have worked on them or any other job in our jurisdiction . . . If Dixon and Christopher had had a job in North Carolina, they could transfer me as long as it was in my jurisdiction."

The respondents' only witness, Mr. Burnette, foreman at Clarksville, testified: "There were two jobs in progress at the same time in Clarksville, one was remodeling and the other was new construction. . . . The men sent to me from Local 585 were used interchangeably . . . and I had authority to transfer them . . . back and forth. If Dixon and Christopher . . . told me that they needed some of my

steam fitters or welders on the Butner job (North Carolina) I would have had the authority to take those men to Butner for work there. . . . As far as I knew it would not be necessary for them to go back to Mr. Whitaker and be reassigned by him."

The hearing commissioner made detailed findings of fact and upon them based his conclusions of law that the contract was made in North Carolina, between the employer, Dixon and Christopher, Inc., (whose office and place of business is in Greensboro, North Carolina,) and Mr. Warren, whose residence is in Durham, North Carolina. The contract of employment was not expressly for services exclusively outside the State of North Carolina. Based thereon the hearing commissioner awarded compensation.

Upon appeal and petition for review, the full commission held a hearing, and adopted as its own the findings, conclusions, and award of the hearing commissioner. Upon appeal by the employer, the Superior Court of Guilford County overruled the exceptions and affirmed the award. From the judgment accordingly, the defendants appealed.

*Smith, Moore, Smith, Schell & Hunter, for defendants, appellants.*
*Bryant, Lipton, Strayhorn & Bryant, By: Ralph N. Strayhorn, F. Gordon Battle, for plaintiff, appellee.*

HIGGINS, J. The hearing commissioner, the full commission, and the superior court by findings of fact and conclusions of law established the following: (1) Dixon and Christopher, Inc., at all times pertinent to this inquiry was a North Carolina corporation with its principal office in Greensboro, N.C.; (2) The claimant, John Wesley Warren, was a resident of Durham, North Carolina; (3) The contract of employment was made in North Carolina through Local Union No. 585; and (4) The contract was not expressly for services outside North Carolina.

The evidence at the hearing supports the conclusion the contract was made in North Carolina. The contractor was obligated to employ union men from Local No. 585 in Durham. The foreman on the employer's job called Mr. Whitaker, manager of Local 585, and asked him to send a pipe fitter for work at Clarksville, Virginia. Mr. Whitaker selected the claimant and called him to the union office in Durham, told him of the job then open. Claimant obtained a referral slip, giving his name, etc., had it certified by Mr. Whitaker, and reported to the job in Clarksville. The employer had a right to reject him if work was not available, in which case the employer was re-

quired by his contract to pay claimant both travel and reporting time. At the time claimant reported, the job was open. He delivered the referral slip to the foreman and went to work under the foreman's direction. The referral slip was sent to the employer's office in Greensboro where the pay checks were made out and returned to the foreman for delivery to the claimant. The selection of the worker, the details of having him report were already arranged by Mr. Whitaker in Durham at the request of the foreman at Clarksville.

The foregoing findings of fact justified the conclusion the contract was entered into at Durham, North Carolina. Accepting the worker on the job was merely the consummation of what had been previously arranged, that is, the employment. The offer of the job was made to Mr. Warren by Mr. Whitaker at the request of Mr. Burnette. Mr. Warren indicated his acceptance by obtaining the referral slip at Durham and implemented it by going to Clarksville, presenting himself to the foreman, and entering upon the work assigned to him. No part of the contract was arranged by the claimant and the foreman. The claimant's acceptance of the offer is as clearly shown by his conduct in reporting to Mr. Whitaker at the union office in Durham as if he had said, "I accept."

The following is from the case of *Gomez v. Federal Stevedoring Co.*, decided by the Appellate Division of the Superior Court of New Jersey (5 N.J. Super. 100, 68 A. 2d 482): "While it is true that there was no proof of oral acceptance in this State (N.J.) by the petitioner of the offer of employment . . . the offer was accepted in this State (N.J.) by petitioner's acts. His tacit assent when the offer of employment was made, coupled with his compliance of the terms of the offer (a job in New York) . . . constituted an acceptance in this State (N. J.). Although assent must be manifested in order to be legally effective, it need not be expressed in words. Modern law rightly construes both acts and words as having the meaning which a reasonable person present would put upon them in view of the surrounding circumstances."

In *Bowers v. Bridge Co.*, 43 N.J. Super. 48, 127 A. 2d 580, the Court said: "Agency apart, the acceptance by petitioner in Trenton of the employment opportunity offered him so as to fix the *situs* of the contract in New Jersey is adequately established by his action in signifying his assent to the proposal at the union hall in Trenton and in proceeding at once to Morrisville (Pa.)." *Daggett v. Steel Co.*, 334 Mo. 207, 65 S.W. 2d 1036; *Pearson v. Service Co.*, 166 Kan. 300, 201 P. 2d 643.

In discussing a case arising under the Florida Workmen's Compen-

sation Act (similar to ours), the Florida Appellate Court said: "It was clearly known to the employer-offeror that in order to accept the offer the employee would have to leave his employment in Florida and travel to Atlanta. It was equally obvious to the offeror that embarking on that course of action would in itself constitute a substantial detriment to the offeree and, from the outset, that the trip from Miami to Atlanta was a substantial part of the exchange contemplated by the offer of employment." *Peterson v. Ray-Hof Agencies,* Fla., 117 So. 2d 497.

Expressing a contrary view are three cases from Missouri and one from Louisiana: *Deister v. Thompson,* 352 Mo. 871, 180 S.W. 2d 15; *Hunt v. Jefferies,* 236 Mo. App. 476, 156 S.W. 2d 23; *Carpenter v. Wm. S. Lozier, Inc.,* 353 Mo. 864, 184 S.W. 2d 999; *Rushing v. Travelers Ins. Co.,* 85 So. 2d 298 (La.).

*Mallard v. Bohannon,* 220 N.C. 536, 18 S.E. 2d 189, on rehearing 221 N.C. 227, 19 S.E. 2d 880, in nowise is in conflict with the views herein expressed. In the *Mallard* case the employment (sales agent in a designated territory in north Florida and south Georgia) showed the services were to be rendered exclusively outside North Carolina.

In the case of *Reaves v. Mill Co.,* 216 N.C. 462, 5 S.E. 2d 305, the accident occurred in South Carolina. The claimant was a resident of South Carolina and, therefore, excluded by our statute G.S. 97-36. In *Hart v. Motors,* 244 N.C. 84, 92 S.E. 2d 673, the claimant was found to be *not an employee but an independent contractor* and, therefore, not within our workmen's compensation act.

This proceeding was conducted throughout and argued here upon the issues herein discussed. However, it may well be that the stipulations entered at the hearing that the parties were subject to and bound by the provisions of the North Carolina Workmen's Compensation Act and the execution of the Commission's form No. 21 are conclusive of the questions principally in dispute.

Notwithstanding the stipulation, we have examined the evidence, findings of fact, conclusions of law, and award made in the case in the light of the appellants' assignments of error. The record contained no evidence the employer made payments to the Employment Security Commission of North Carolina on claimant's behalf as found by the hearing commissioner in finding of fact No. 7. There was evidence from which it may be inferred that such payments were made for another employee from the same union on the same job but there is no evidence to indicate payment was made on behalf of the claimant. However, this finding is without significance since the evidence otherwise is amply sufficient to sustain all the findings of fact ma-

terial to decision in the case. The facts found sustain the conclusions of law, and the conclusions support the award.

The judgment of the superior court is

Affirmed.