***********
Upon review of the competent evidence of record, with reference to the errors assigned, and considering the briefs and oral arguments of the parties, the Full Commission finds no good grounds to receive further evidence, or to rehear the parties or their representatives. Upon reconsideration of the evidence, the Full Commission reverses the Opinion and Award of the Deputy Commissioner, and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which the parties entered into at and following the hearing as: *Page 2 
 STIPULATIONS
1. An employment relationship existed between the parties at the time of the alleged incident and injury.
2. On October 6, 2006, Plaintiff allegedly sustained an injury.
3. Plaintiff's average weekly wage at the time of the alleged injury was approximately $869.55 per week.
4. Plaintiff is currently working for Defendant-Employer.
5. On October 6, 2006, Defendant-Employer employed Plaintiff as a long-distance truck driver. Plaintiff parked his truck at a truck stop in the State of Maryland and was walking towards the truck stop building when a Ford F150 owned and operated by the truck stop struck him. It is believed that Defendant-Employer dispatched Plaintiff from Laurel, Mississippi with a drop in Sumter, South Carolina and a final drop in Berwyn, Pennsylvania on the route during which the October 6, 2006 work injury occurred. Plaintiff filed a third-party claim against Centerville Plaza, Inc. and Mr. Kirk Leroy Fuerstenav.
6. On October 6, 2006, Plaintiff was operating in the course and scope of his employment.
7. Defendant-Employer is a Mississippi corporation.
8. Defendant-Employer is self-insured in the State of Mississippi, and its claims are managed by Safety Risk Services, Inc.
9. Plaintiff received workers' compensation benefits pursuant to the Mississippi Workers' Compensation Act, file number MWCC 0611075, in the amount of $13,270.34 for indemnity compensation and $24,925.72 for medical compensation. *Page 3 
10. Defendant-Employer is insured in the State of North Carolina by Defendant-Carrier.
11. The parties stipulated to the following documents being admitted into evidence as stipulated exhibits:
 a. Stipulated Exhibit One: Pre-Trial Agreement;
 b. Stipulated Exhibit Two: Plaintiff's personnel file, wage records, and log records;
 c. Stipulated Exhibit Three: Various documents, including:
 1. Correspondence from Defendant-Employer to Plaintiff dated May 14, 2004;
 2. Documents from Johnston County Tax Collector and Johnston County Register of Deeds offices;
 3. Defendant-Employer's registration with the North Carolina Department of the Secretary of State and accompanying documentation;
 4. Accident report of Maryland State Police dated October 6, 2006;
 5. Plaintiff's diagram and written description of the October 6, 2006 accident scene;
 d. Stipulated Exhibit Four: Plaintiff's medical records;
 e. Plaintiff's Exhibit One: "Driver's Daily Log" forms for Plaintiff from October 4, 2006 through October 6, 2006. *Page 4 
12. On February 2, 2010, the Deputy Commissioner granted Plaintiff's Motion to Receive Additional Evidence and admitted into evidence the Motion as an Affidavit, along with Plaintiff's W-2c federal income tax forms from 2004 through 2007.
 *********** ISSUES
The issues to be determined are:
1. Whether the North Carolina Industrial Commission has subject matter jurisdiction over this claim under N.C. Gen. Stat. § 97-36?
2. Whether Plaintiff provided adequate notice to Defendants of his North Carolina workers' compensation claim under N.C. Gen. Stat. § 97-22?
 ***********
Based upon the competent and credible evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is 61 years old, with a date of birth of September 12, 1949. Plaintiff has been living in Burlington, North Carolina for the past 12 to 13 years. Plaintiff is an over-the-road truck driver, and has been driving various types of commercial trucks throughout his career.
2. Defendant-Employer is a trucking company that transports building materials and transformers using flatbed trucks. Defendant-Employer's corporate headquarters is located in Laurel, Mississippi, and its primary trucking terminal is located in Ellisville, Mississippi. Although Defendant-Employer has a drop yard in Kenly, North Carolina containing a building that stores supplies such as tarps, chains, binders, and other items that a driver may need on the road, and its drivers occasionally may leave their trailers there if they need time off and cannot *Page 5 
complete a trip, no freight is picked up or delivered through the drop yard. The drop yard does not have a dispatcher, and none of Defendant-Employer's drivers operate out of it. Defendant-Employer does have three employees who work full-time out of the Kenly facility. However, the Full Commission finds, based upon the greater weight of the evidence, that Defendant-Employer's principal place of business is not in the State of North Carolina.
3. In 2002, Plaintiff responded to an advertisement that Defendant-Employer ran in the Burlington TimesNews newspaper by calling Ms. Dorothy Freeman Ivey, a recruiter employed by Defendant-Employer who worked at the drop yard in Kenly, North Carolina. In September 2002, Ms. Ivey faxed Plaintiff an employment application and upon completing it, he faxed it back to her. Upon receipt of Plaintiff's completed employment application, Ms. Ivey conducted a background check, including a check of his driving record, so that Defendant-Employer could determine whether Plaintiff was eligible for hire as a truck driver. Ms. Ivey eventually faxed Plaintiff's employment application to Defendant-Employer's safety department in Ellisville, Mississippi for a final hiring determination.
4. According to Ms. Ivey, as a recruiter, she does the initial screening and processing of employment applications for Defendant-Employer. The applications are then sent to Ellisville, Mississippi for further processing. Neither Ms. Ivey, nor the other recruiter for Defendant-Employer, Ms. Michele King, who works in the Mississippi corporate headquarters, is authorized to hire or terminate employees.
5. After Defendant-Employer investigated Plaintiff's driving record and confirmed that he was eligible for hire, Ms. Ivey informed Plaintiff of the approval of his application and that he had an opportunity to travel to Defendant-Employer's corporate headquarters in Laurel, Mississippi for hiring. On December 9, 2002, Plaintiff traveled to Defendant-Employer's *Page 6 
corporate headquarters where he completed a road test, a drug screen, a physical examination, underwent a criminal background check, and filled out various forms over the course of a multiple-day period. Plaintiff then participated in an orientation with Defendant-Employer, and filled out several other forms, including a wage structure report, an employment eligibility verification form, and tax forms.
6. In order for Defendant-Employer's newly-hired truck drivers to begin driving trucks, they must first successfully pass a road test, drug screen, and physical examination, and submit the required paperwork. In December 2002, Plaintiff completed all of these acts in the State of Mississippi. The last act giving rise to the contract of employment between Plaintiff and Defendant-Employer in December 2002 took place in the State of Mississippi.
7. Plaintiff drove trucks for Defendant-Employer from December 2002 through June 2003. During this time period, Plaintiff received his dispatches from Ellisville, Mississippi from a dispatcher named Benny. On or about June 13, 2003, Plaintiff resigned his employment with Defendant-Employer and went to work for another trucking company.
8. On May 14, 2004, Defendant-Employer's Mississippi recruiter, Ms. King, sent Plaintiff correspondence inviting him to re-apply for employment. When Plaintiff contacted Ms. King by telephone from his home in Burlington, North Carolina, he advised her that he would be willing to return to work for Defendant-Employer under the following conditions: that he would have a better truck; that he would have a new dispatcher; and that he would be re-hired at a level four pay grade. Ms. King advised that she would have to relay these terms to Ms. Suzanne Skipper and Mr. Larry Knight, who had hiring authority, to determine whether they could be met. Thereafter, Ms. King called Plaintiff back at his home in Burlington, North Carolina and *Page 7 
advised him that Ms. Skipper and Mr. Knight were willing to accept the three terms of re-employment he requested.
9. In reliance upon Defendant-Employer's acceptance of his pre-conditions before acceptance of employment, Plaintiff resigned his employment with his current employer to accept employment with Defendant-Employer. Plaintiff's official re-hire date was August 16, 2004. Subsequent to Plaintiff's official re-hire date of August 16, 2004, Defendant-Employer transported Plaintiff to its corporate headquarters in Laurel, Mississippi to complete a "re-orientation," including a physical examination and a driving test. Defendant-Employer did not require Plaintiff to complete a new application for employment. Although federal regulations required some of the aspects of the "re-orientation" process that Plaintiff undertook while at Defendant-Employer's corporate headquarters in Laurel, Mississippi to be completed before he could drive a truck, he was already on the payroll and being paid for this time. According to Plaintiff, Defendant-Employer abbreviated the "re-orientation" process and driving test since he was not a new employee, and he did not complete this process until August 19, 2004, three days after his official re-hire date.
10. On October 6, 2006, Plaintiff was working for Defendant-Employer as a truck driver on a run that began two days prior in Ellisville, Mississippi. Just before 7:00 a.m., Plaintiff was at an independently owned truck stop in Centreville, Maryland when a 1993 Ford F-150 pick-up truck operated by an employee of the truck stop struck him as he was walking into the truck stop. Plaintiff sustained injuries to his left knee, hip, and back.
11. Plaintiff's only contact with the State of North Carolina while on this trip was the two to three hours that he drove on Interstate 95 as he traveled north to his final drop in Berlin, *Page 8 
Pennsylvania. At no time did Plaintiff stop at Defendant-Employer's drop yard in Kenly, North Carolina during this trip.
12. As a result of Plaintiff's October 6, 2006 work injury, he filed a workers' compensation claim in the State of Mississippi and received workers' compensation benefits in the amount of $13,270.34 for indemnity compensation and $24,925.72 for medical expenses.
13. Defendant-Employer's truck drivers report to a dispatcher in Ellisville, Mississippi. Other than exceptional circumstances, Defendant-Employer does not dispatch its drivers from any location other than the State of Mississippi. Plaintiff's dispatcher was in the State of Mississippi except for one period when there was a storm that affected communications.
14. Defendant-Employer's truck drivers normally begin their routes by picking up transformer loads from the Laurel, Mississippi plant. All of Plaintiff's scheduled repair work, tags, title, and truck up-keep is done in the State of Mississippi. Defendant-Employer tries to service most of its trucks in the State of Mississippi, but if a problem occurs on the road, its drivers can have their trucks serviced at several different shops throughout the 32 states where Defendant-Employer's trucks run. Defendant-Employer's drivers operate in a 32 state territory east of the Mississippi River.
15. As a truck driver for Defendant-Employer, Plaintiff spent a majority of his time on the road and in states other than North Carolina. More of Plaintiff's loads originated or ended in either the State of Mississippi or the Commonwealth of Pennsylvania than in the State of North Carolina. According to Plaintiff, the time that he spends in Burlington, North Carolina is typically off-duty time at his home, and he spends a minimal amount of time either making deliveries in or travelling upon roads in the State of North Carolina as compared to his total driving time. A review of Plaintiff's "Driver's Daily Log" forms indicates that he had greater *Page 9 
contact with the Commonwealth of Pennsylvania than with the State of North Carolina, and essentially equal contact with the State of Mississippi and North Carolina.
16. The Full Commission finds, based upon the greater weight of the evidence, that Plaintiff's greatest significant contacts to his employment were with the State of Mississippi, and not with the State of North Carolina. The Full Commission further finds that Plaintiff's principal place of employment was not in the State of North Carolina.
17. The Full Commission finds, based upon the greater weight of the evidence, that Ms. King's telephone call to Plaintiff at his home in Burlington, North Carolina in August 2004 to advise him that Defendant-Employer was willing to accept his terms of re-employment was the last act required to make a binding obligation between Plaintiff and Defendant-Employer. The Full Commission further finds that because the last act required to make a binding obligation between Plaintiff and Defendant-Employer occurred in the State of North Carolina, the formation of the 2004 employment contract occurred in North Carolina. Thus, the North Carolina Industrial Commission has jurisdiction over the subject matter of these proceedings, and the parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act, as Defendant-Employer employed at least three employees in the State of North Carolina.
18. The Full Commission finds, based upon the greater weight of the evidence, that there is insufficient evidence in the current record to determine whether Plaintiff provided adequate notice to Defendants of his North Carolina workers' compensation claim under N.C. Gen. Stat. § 97-22, or to determine the compensable consequences of Plaintiff's October 6, 2006 work injury. Thus, this matter should be remanded for a full evidentiary hearing on all remaining issues. *Page 10 
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. The North Carolina Industrial Commission has subject matter jurisdiction over claims arising out of work injuries occurring outside the State of North Carolina: "(i) if the contract of employment was made in this State, (ii) if the employer's principal place of business is in this State, or (iii) if the employee's principal place of employment is within this State." N.C. Gen. Stat. § 97-36 (2010). "To determine where a contract for employment was made, the Commission and the courts of this state apply the `last act' test," meaning that "`the final act necessary to make it a binding obligation must be done here.'" Murray v.Ahlstrom Industrial Holdings, Inc.,131 N.C. App. 294, 296, 506 S.E.2d 724, 726 (1998), citingGoldman v. Parkland of Dallas, Inc.,277 N.C. 223, 176 S.E.2d 784 (1970) and Thomas v. OverlandExpress, Inc., 101 N.C. App. 90, 96, 398 S.E.2d 921, 926 (1990).
2. In the case at bar, as in Murray, the evidence established that both Defendant-Employer's principal place of business and Plaintiff's principal place of employment are outside the State of North Carolina. Murray,131 N.C. App. 294, 506 S.E.2d 724 (1998). "Thus, in order for the Commission to have jurisdiction over this matter, the contract for employment must have been entered into in this state." N.C. Gen. Stat. § 97-36 (2010); Murray,131 N.C. App. 294, 296, 506 S.E.2d 724, 726 (1998).
3. In Murray, the plaintiff worked for the defendant-employer on a prior occasion, the employment ended for a short period of time, and then the defendant-employer initiated contact with the plaintiff at his residence in North Carolina via telephone concerning re-hiring. *Page 11 Murray, 131 N.C. App. 294, 506 S.E.2d 724 (1998). Similar to the case at bar, the plaintiff in Murray made specific wage demands requiring Defendant-Employer's agent handling the communications between the parties to check with management-level employees with hiring authority to determine if the terms of re-employment set forth by the plaintiff were acceptable.Id. In both Murray and the case at bar, the defendant-employer's agent made a follow-up telephone call to the plaintiff advising that the defendant-employer was willing to accept the terms of re-employment requested. Id.
4. The Murray court held that the last act for the formation of the employment contract occurred in North Carolina when the defendant-employer's agent telephoned the plaintiff at his home in North Carolina to advise that defendant-employer would accept the terms of re-employment requested. Id. The Murray court further reasoned that "[a]lthough the paperwork filled out by plaintiff was required before he could begin work, this seems to be . . . mostly administrative. The paperwork appears to be more of a consummation of the employment relationship than the `last act' required to make it a binding obligation." Murray,131 N.C. App. 294, 506 S.E.2d 724 (1998), citing Warren v. Dixonand Christopher Co., 252 N.C. 534, 114 S.E.2d 250 (1960).
5. Because the relevant facts of Murray are similar to the case at bar, the law of that case is controlling here.Murray, 131 N.C. App. 294, 506 S.E.2d 724 (1998). Ms. Michele King's telephone call to Plaintiff at his home in Burlington, North Carolina in August 2004 to advise him that Defendant-Employer was willing to accept his terms of re-employment was the last act required to make a binding obligation between Plaintiff and Defendant-Employer. The "re-orientation" process Plaintiff completed thereafter was more of a consummation of the employment relationship than the "last act" required to make it a binding obligation. Goldman, *Page 12 277 N.C. 223, 176 S.E.2d 784 (1970); Murray,131 N.C. App. 294, 506 S.E.2d 724 (1998); Thomas,101 N.C. App. 90, 398 S.E.2d 921 (1990). The last act required to make a binding obligation between Plaintiff and Defendant-Employer occurred in the State of North Carolina; therefore, the contract of employment was made in the State of North Carolina. N.C. Gen. Stat. § 97-36 (2010).
6. Plaintiff's principal place of employment was not in the State of North Carolina. Thomas,101 N.C. App. 90, 398 S.E.2d 921 (1990).
7. The North Carolina Industrial Commission has jurisdiction over the subject matter of these proceedings, and the parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act. N.C. Gen. Stat. § 97-36 (2010).
8. There is insufficient evidence in the current record to determine whether Plaintiff provided adequate notice to Defendants of his North Carolina workers' compensation claim under N.C. Gen. Stat. § 97-22, or to determine the compensable consequences of Plaintiff's October 6, 2006 work injury. This matter shall, therefore, be remanded to Chief Deputy Commissioner Wanda Blanche Taylor for assignment to a Deputy Commissioner for a full evidentiary hearing, including deposition and/or other witness testimony, if deemed necessary, on all remaining issues to be determined and issuance of an Opinion and Award.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission makes the following:
 AWARD
1. The North Carolina Industrial Commission has jurisdiction over this claim. *Page 13 
2. This matter is hereby reopened and remanded to Chief Deputy Commissioner Wanda Blanche Taylor for assignment to a Deputy Commissioner for a full evidentiary hearing in order to receive additional evidence, including deposition and/or other witness testimony, if deemed necessary, concerning the issues of whether Plaintiff provided adequate notice to Defendants of his North Carolina workers' compensation claim under N.C. Gen. Stat. § 97-22, and the compensable consequences of Plaintiff's October 6, 2006 work injury. The Deputy Commissioner shall issue an Opinion and Award.
3. Defendant shall pay the costs of these proceedings.
This the ___ day of February 2011.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/___________________ DANNY LEE McDONALD COMMISSIONER
 S/___________________ STACI T. MEYER COMMISSIONER *Page 1