IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA16-593

Filed: 7 February 2017

North Carolina Industrial Commission, I.C. Nos. 14-726251 & 14-773225

MARTHA HOLMES, Employee, Plaintiff

v.

ASSOCIATED PIPE LINE CONTRACTORS, INC., Employer, OLD REPUBLIC CONSTRUCTION PROGRAM GROUP, INC., Carrier (GALLAGHER BASSETT SERVICES, Third-Party Administrator), Defendants.

Appeal by plaintiff from opinion and award entered 2 March 2016 by the North Carolina Industrial Commission. Heard in the Court of Appeals 2 November 2016.

*Oxner + Permar, PLLC, by John R. Landry, Jr., for plaintiff-appellant.*

*Hedrick Gardner Kincheloe & Garofalo, LLP, by M. Duane Jones and Thomas W. Page, for defendants-appellees.*

DAVIS, Judge.

This workers' compensation case presents the jurisdictional question of whether an employee's submission to a mandatory drug test in another state before beginning work constitutes the last act necessary to form an employment contract between the employee and her employer. Martha Holmes ("Plaintiff") appeals from an opinion and award of the North Carolina Industrial Commission dismissing her claims for benefits under the North Carolina Workers' Compensation Act based on

lack of jurisdiction. Because we conclude that the last act necessary to create her employment contract occurred in Texas, we affirm.

## Factual and Procedural Background

Associated Pipe Line Contractors, Inc. ("Associated") is headquartered and has its principal place of business in Houston, Texas. In the fall of 2013, Associated was in need of workers for a project in Huntsville, Texas. Associated's superintendent contacted the on-site union steward at the work site in Huntsville and informed the steward that Associated needed union workers for the project. The steward then contacted "Local 798," a local trade union based in Tulsa, Oklahoma.

Since 2007, Plaintiff, a member of Local 798, had been working as a welder helper for various contractors. On 29 October 2013 — while Plaintiff was living in Fayetteville, North Carolina — she was contacted by telephone by a representative of Local 798 and told to report to an assignment in Huntsville, Texas. Plaintiff was instructed that "she had 24 hours to be in route to the jobsite" and that Associated would reimburse her for her travel expenses.

When she arrived in Huntsville, Plaintiff was required to submit to a drug test and complete various forms — including an authorization for a Department of Transportation background check — before she could begin working. Within two hours after taking the drug test, Plaintiff began work at the Huntsville jobsite.

On 8 and 26 January 2014, Plaintiff suffered injuries on the jobsite. On 24 March 2014, Plaintiff filed a Form 18 Notice of Accident for the first injury, and on 5 September 2014, she submitted a Form 18 for the second injury. Associated filed a Form 61 denying liability on 12 May 2014 and an amended Form 61 on 21 August 2014. Its denial of liability was based on the assertion that "the North Carolina Industrial Commission does not have jurisdiction over this claim, which occurred outside of North Carolina."

On 13 May 2014, Plaintiff filed a Form 33 Request that Claim be Assigned for Hearing. On 25 June 2014, Associated filed a Form 33R disputing that Plaintiff had sustained a compensable injury and once again contending that the Industrial Commission lacked jurisdiction over her claims. Plaintiff subsequently filed an amended Form 33 to include her second injury.

On 9 December 2014, a hearing was held before Deputy Commissioner George T. Glenn, II. Plaintiff, Ryan Wilcox, Associated's Vice President of Safety and Compliance, and Gary Allison, the welding foreman for the project, appeared as witnesses at the hearing. Wilcox testified that when Associated is in need of laborers for a project, it requests the workers through an on-site union steward. The steward then contacts a trade union, who, in turn, dispatches workers from various locations around the country. When the workers arrive at the jobsite, they are required to take a drug test and consent to a background check. Unless the worker submits to both

the drug test and the background check, she will not be hired. Because it takes several days for Associated to receive the results, the worker begins work immediately upon taking the drug test and signing a form acknowledging consent to the background check.

On 25 February 2015, the Deputy Commissioner issued an opinion and award dismissing Plaintiff's claims based on lack of subject matter jurisdiction. Plaintiff appealed to the Full Commission on 2 March 2015. On 1 October 2015, the Full Commission heard arguments from the parties as to whether the Commission possessed jurisdiction over Plaintiff's claims.

On 2 March 2016, the Commission issued its Opinion and Award, which contained the following pertinent findings of fact:

> 6. Plaintiff was working for [Associated] on a job site located in Huntsville, Texas at the time of her alleged injuries. This was the only location at which plaintiff ever worked for [Associated].
>
> 7. While performing a contract job in Huntsville, Texas, [Associated] contacted the on-site union steward and requested union workers for the job. The union steward contacted the Local 798 union in Tulsa, Oklahoma. A dispatcher with the Local 798 union in Oklahoma then contacted plaintiff at her home in Fayetteville, North Carolina.
>
> 8. The Local 798 dispatcher told plaintiff to report to an assignment in Huntsville, Texas as a welder's helper. The union dispatcher informed plaintiff that she had 24 hours to be *en route* to the job site in Huntsville, Texas, and she was required to travel 500 miles per day.

9.  [Associated] did not specifically request plaintiff for the job in Huntsville, Texas when requesting workers through the Local 798 union, nor did [Associated] directly contact plaintiff in North Carolina for the Huntsville, Texas job.

10. Neither plaintiff nor [Associated] could negotiate plaintiff's rate of pay or her work schedule for her work on the Huntsville, Texas job. Plaintiff's rate of pay was pre-determined by an agreement between [Associated] and the Pipe Line Contractors Association. Further, plaintiff's working hours on the Huntsville, Texas job were pre-determined by an agreement between [Associated], the union, and Texas state requirements.

11. Ryan Michael Wilcox testified as Vice President of Safety and Compliance for [Associated]. In this position, Mr. Wilcox assists union workers with completing necessary paperwork required as part of [Associated]'s hiring process. This hiring process includes obtaining consent from union workers to perform a background check. Mr. Wilcox was not involved in contacting the Local 798 union to request workers.

12. Mr. Wilcox testified that if any union member does not provide a urine sample for purposes of a drug screen or consent to a background check, then those union members are not employable and [Associated] does not pay the union member any compensation for travel to the job site or otherwise. Once the union member provides the urine sample and consents to the background check, that individual reports to the safety office for safety training, environmental training, and other orientation presentations. Once the union member has successfully completed the orientation process, that individual is allowed to begin work at the job site and continue work until results of the drug test and background check are returned.

13. Plaintiff completed the necessary paperwork,

consented to the background check, and provided a urine sample for the drug test on October 29, 2013. Upon completion of these pre-employment processes, [Associated] hired plaintiff and she began work at the Huntsville, Texas job site.

14. Mr. Wilcox testified that if plaintiff's drug test or background check had not "come back clean," she would have been terminated from the Huntsville, Texas job and paid a per-day rate for the time she worked versus the full hourly rate required by the union agreement.

15. Plaintiff contends that she was automatically hired by [Associated] once she received the call from the Local 798 union dispatcher to present to the Huntsville, Texas job. However, plaintiff testified that she did not begin work on the Huntsville, Texas job until after she consented to the drug screen required by [Associated].

. . . .

18. The preponderance of the evidence in view of the entire record establishes that plaintiff's submission to a drug test and background check and completion of certain paperwork were conditions precedent to her hire by [Associated] for the Huntsville, Texas job.

19. The preponderance of the evidence in view of the entire record establishes that plaintiff submitted to the drug test, consented to the background check, and completed all necessary paperwork upon her arrival in Huntsville, Texas. It was only upon the completion of these processes that [Associated] hired plaintiff and she began work on the Texas job. Accordingly, the Commission finds that the last act required to create a contract of employment between plaintiff and [Associated] occurred in Texas.

Based on these findings of fact, the Commission made the following pertinent conclusions of law:

3. "To determine where a contract for employment was made, the Commission and the courts of this state apply the 'last act' test." *Murray v. Ahlstrom Indus. Holdings, Inc.*, 131 N.C. App. 294, 296, 506 S.E.2d 724, 726 (1998) (internal citations omitted).

4. "[F]or a contract to be made in North Carolina, the final act necessary to make it a binding obligation must be done here." *Thomas v. Overland Express, Inc.*, 101 N.C. App. 90, 96, 398 S.E.2d 921, 926 (1990) (internal citations omitted). The completion of paperwork generally constitutes an administrative task that serves as a consummation of the employment relationship and is not the "last act" for purposes of making the relationship a binding obligation. *Murray*, 131 N.C. App. at 296-97, 506 S.E.2d at 726-27 (citing *Warren v. Dixon and Christopher Co.*, 252 N.C. 534, 114 S.E.2d 250 (1960)). However, the completion of such things as an orientation program, a physical examination, a road test, or a drug test as part of the hiring process extends "well beyond 'mostly administrative' paperwork." *Taylor v. Howard Transp., Inc.*, ___ N.C. App. ___, ___, 771 S.E.2d 835, 839 (2015), *disc. rev. denied*, ___ N.C. ___ (2015).

5. Based upon a preponderance of the evidence in view of the entire record, the Commission concludes that plaintiff's submission to the drug test and consent to a background check outside of North Carolina, upon her arrival in Huntsville, Texas, were conditions precedent to her hire by [Associated] and such contingences [sic] were more than administrative paperwork. Had plaintiff not submitted to the drug test and consented to the background check, [Associated] would not have hired plaintiff to work on the Huntsville, Texas job. Consequently, the Commission concludes the "last act" necessary to create an employment contract and a binding obligation between plaintiff and [Associated] occurred in Texas. N.C. Gen. Stat. § 97-36; *Taylor*, 771 S.E.2d at 839; *Thomas*, 101 N.C. App. at 96, 398 S.E.2d at 926; *Murray*, 131 N.C. App. at 296, 506 S.E.2d at 726.

6. Because the contract of employment between plaintiff and [Associated] was not made in North Carolina; [Associated]'s principal place of business is not in North Carolina; and plaintiff's principal place of employment was not in North Carolina, the North Carolina Industrial Commission cannot assert subject matter jurisdiction over these claims. N.C. Gen. Stat. § 97-36.

Based on these conclusions, the Commission dismissed Plaintiff's claims. Deputy Commissioner Bernadine S. Ballance dissented based on her belief that the Commission possessed jurisdiction in light of the fact that Plaintiff's contract of employment was, in fact, made in North Carolina. On 23 March 2016, Plaintiff filed a timely notice of appeal.

**Analysis**

Appellate review of an opinion and award of the Industrial Commission is typically "limited to consideration of whether competent evidence supports the Commission's findings of fact and whether the findings support the Commission's conclusions of law." *Philbeck v. Univ. of Mich.*, 235 N.C. App. 124, 127, 761 S.E.2d 668, 671 (2014) (citation and quotation marks omitted). "The findings of fact made by the Commission are conclusive on appeal if supported by competent evidence even if there is also evidence that would support a contrary finding. The Commission's conclusions of law, however, are reviewed *de novo*." *Morgan v. Morgan Motor Co. of Albemarle*, 231 N.C. App. 377, 380, 752 S.E.2d 677, 680 (2013) (internal citation omitted), *aff'd per curiam*, 368 N.C. 69, 772 S.E.2d 238 (2015). However,

> [w]hen reviewing an Opinion and Award, the jurisdictional facts found by the Commission are not conclusive even if there is evidence in the record to support such findings. Instead, reviewing courts are obliged to make independent findings of jurisdictional facts based upon consideration of the entire record.

*Salvie v. Med. Ctr. Pharm. of Concord, Inc.*, 235 N.C. App. 489, 491, 762 S.E.2d 273, 276 (2014) (internal citations and quotation marks omitted).

The North Carolina Workers' Compensation Act provides, in pertinent part, as follows:

> Where an accident happens while the employee is employed elsewhere than in this State and the accident is one which would entitle him or his dependents or next of kin to compensation if it had happened in this State, then the employee or his dependents or next of kin shall be entitled to compensation *(i) if the contract of employment was made in this State*, (ii) if the employer's principal place of business is in this State, or (iii) if the employee's principal place of employment is within this State; provided, however, that if an employee or his dependents or next of kin shall receive compensation or damages under the laws of any other state nothing herein contained shall be construed so as to permit a total compensation for the same injury greater than is provided for in this Article.

N.C. Gen. Stat. § 97-36 (2015) (emphasis added).

Here, it is undisputed that Associated's principal place of business is in Texas, and Plaintiff does not contend that her principal place of employment is within North Carolina. Thus, the only remaining question is whether Plaintiff's contract of employment was made in Texas or North Carolina.

In determining where a contract of employment was made, our courts apply the "last act" test. *Murray v. Ahlstrom Indus. Holdings, Inc.*, 131 N.C. App. 294, 296, 506 S.E.2d 724, 726 (1998). "For a contract to be made in North Carolina, the final act necessary to make it a binding obligation must be done here." *Id.* (citation, quotation marks, and brackets omitted). In the present case, Plaintiff contends that the last act necessary to form her employment contract occurred in North Carolina because she accepted the job for Associated by telephone from her North Carolina home. Associated, conversely, argues that her employment was conditioned upon her submission to a drug test and written consent to a background check — acts that did not occur until she arrived in Texas.

Plaintiff relies primarily on our decision in *Murray*. In that case, the defendant-employer's agent contacted the plaintiff-employee in North Carolina for a position as an instrument and pipe foreman at a jobsite in Mississippi. The plaintiff, who had previously performed work for the employer, negotiated his salary over the telephone in North Carolina with the agent. When the plaintiff arrived at the jobsite in Mississippi, he was required to fill out paperwork before he could begin work. However, "because he was a rehire (as opposed to a new hire) he was not required to submit to a physical, drug test, or go to the local employment security office." *Murray*, 131 N.C. App. at 295, 506 S.E.2d at 725.

Shortly thereafter, the plaintiff was injured on the job. He filed a workers' compensation claim with the North Carolina Industrial Commission, and the Commission determined it possessed jurisdiction over the claim. *Id.* at 295, 506 S.E.2d at 726.

On appeal, this Court affirmed, holding that "[t]he paperwork appears to be more of a consummation of the employment relationship than the 'last act' required to make it a binding obligation." *Id.* at 297, 506 S.E.2d at 727. In reaching this conclusion, we noted that "[a]lthough the paperwork filled out by plaintiff was required before he could begin work," the employer had conceded that the paperwork was "mostly administrative." *Id.* Thus, we held that "[t]he Commission's findings were based upon ample competent evidence, and the conclusion that the contract was made in North Carolina was correct." *Id.*

In *Murray*, we cited our prior opinion in *Thomas v. Overland Express, Inc.*, 101 N.C. App. 90, 398 S.E.2d 921 (1990), *disc. review denied*, 328 N.C. 576, 403 S.E.2d 522 (1991). In *Thomas*, an employer arranged for the plaintiff — who lived in North Carolina — to fly to Indiana along with other prospective employees before officially hiring them as truck drivers. Upon arriving in Indiana, "the plaintiff was given a physical and road test by [the employer]." *Id.* at 94, 398 S.E.2d at 924. Four days after his arrival in Indiana, he was informed that he was being hired as a truck driver by the employer and signed employment-related paperwork that same day. The

plaintiff subsequently sustained an injury arising out of his employment. *Id.* at 93, 398 S.E.2d at 924.

The plaintiff filed a workers' compensation claim in North Carolina, which the Industrial Commission dismissed for lack of jurisdiction. *Id.* We affirmed, explaining that "our review of the record in the present case reveals that the events which culminated in plaintiff accepting employment with defendant, and the 'last act' for purposes of conferring extraterritorial jurisdiction on the Commission, occurred in Indiana rather than in North Carolina." *Id.* at 97, 398 S.E.2d at 926.

Associated contends that the present case is most analogous to *Taylor v. Howard Transp., Inc.*, __ N.C. App. __, 771 S.E.2d 835, *disc. review denied*, __ N.C. __, 775 S.E.2d 857 (2015). In *Taylor*, an employer sent the plaintiff a letter "inviting him to reapply to work for [the employer]." *Id.* at __, 771 S.E.2d at 837-38. The plaintiff responded that he would only do so if the employer provided a better truck for him and assigned him to a different dispatcher. The employer told the plaintiff that his conditions would be met if he would "come back to work." *Id.* at __, 771 S.E.2d at 838 (quotation marks omitted). The plaintiff agreed, and the employer arranged for a van to pick the plaintiff up from his home in North Carolina and take him to the employer's headquarters in Mississippi. *Id.* at __, 771 S.E.2d at 838.

After the plaintiff successfully completed in Mississippi the employer's "orientation, a road test, a drug test, and a physical exam[,]" the employer hired the

plaintiff as a truck driver. *Id.* at __, 771 S.E.2d at 836. The plaintiff was subsequently injured in Maryland in the course of his employment. The plaintiff brought a workers' compensation claim in North Carolina, and the Industrial Commission determined that it lacked jurisdiction over the plaintiff's claim. *Id.* at __, 771 S.E.2d at 836.

Concluding that "this case is more closely analogous to *Thomas* than to *Murray*[,]" *id.* at __, 771 S.E.2d at 839, we affirmed the Commission's decision. We reasoned that the employer "did not consider plaintiff an employee until after he had successfully completed the orientation, road test, drug test, and physical exam." *Id.* at __, 771 S.E.2d at 839. Thus, we held that the "plaintiff would not have been hired as an employee if he had failed one of these tests[.]" *Id.* at __, 771 S.E.2d at 838. Moreover, we stated that "[t]he fact that plaintiff was paid for [the three-day orientation period] does not vitiate the fact that plaintiff's employment was contingent upon his successful completion of the orientation, road test, drug test, and physical exam." *Id.* at __, 771 S.E.2d at 839. Therefore, we concluded that the last act forming the plaintiff's employment contract occurred in Mississippi. *Id.* at __, 771 S.E.2d at 839.

We believe that the present facts are more similar to *Taylor* and *Thomas* than *Murray*. The evidence is undisputed that Associated made Plaintiff's submission to a drug test a prerequisite to her employment. It is clear that she would not have been permitted to begin work for Associated had she refused to provide a urine sample.

We are unable to agree with Plaintiff that a prospective employee's submission to a mandatory drug test is akin to the completion of routine paperwork that was determined to be merely a "consummation of the employment relationship" in *Murray*. *See Murray*, 131 N.C. App. at 297, 506 S.E.2d at 727. Rather, a prospective employee's demonstrated willingness to submit to a drug test is more than simply an administrative formality given that — unlike the completion of garden-variety personnel forms — the taking of a drug test carries the risk of failing the test. Moreover, while Plaintiff argues that requiring a drug test as a condition of employment makes sense only if the employee is not permitted to begin work until the *results* of the test are received by the employer, the employer possesses the discretion to determine how soon a new employee may begin working after taking the drug test.

Quite simply, had Plaintiff refused to submit to a drug test upon her arrival in Texas, she would not have been permitted to begin employment with Associated. Therefore, her taking of the drug test was the last act necessary to form a binding employment relationship between her and Associated. Because this act occurred in Texas rather than North Carolina, the Commission lacked jurisdiction over her claims pursuant to N.C. Gen. Stat. § 97-36.[1]

---

[1] In light of our holding that Plaintiff's submission to a drug test was a condition of her employment, we need not determine whether her consent to a background check likewise constituted a separate act necessary to form an employment contract between Plaintiff and Associated.

Plaintiff also cites *Warren v. Dixon & Christopher Co.*, 252 N.C. 534, 114 S.E.2d 250 (1960), to support her argument that because Local 798 was an agent of Associated, the 29 October 2013 telephone conversation between the Local 798 representative and Plaintiff formed a binding employment contract between Plaintiff and Associated. In *Warren*, the plaintiff contracted with a local union in North Carolina to work as a pipe fitter for the employer. After arriving at the jobsite in Virginia, the plaintiff began work, was subsequently injured, and filed a workers' compensation claim in North Carolina. *Id.* at 536-37, 114 S.E.2d at 251-52.

Our Supreme Court affirmed the Commission's determination that it possessed jurisdiction over the plaintiff's claim. The Supreme Court held that even though "[t]he employer had a right to reject [the plaintiff] if work was not available . . . [a]ccepting the worker on the job was merely the consummation of what had been previously arranged, that is, the employment." *Id.* at 537-38, 114 S.E.2d at 252-53.

Here, while it appears from the record that Local 798 was authorized to select prospective employees for Associated, it is undisputed that Associated ultimately retained the right to deny employment to any such person who refused to submit to a drug test upon arrival in Texas. Therefore, the role played by Local 798 in Plaintiff's hiring process does not alter our conclusion that because her employment was contingent upon her submission to a drug test in Texas before she could begin work for Associated, the last act necessary to form a binding employment relationship

occurred in Texas.  Accordingly, the Commission correctly determined that it lacked jurisdiction over Plaintiff's workers' compensation claims.

## Conclusion

For the reasons stated above, we affirm.

AFFIRMED.

Chief Judge MCGEE and Judge INMAN concur.