IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-449

No. COA21-450

Filed 5 July 2022

North Carolina Industrial Commission, I.C. No. 18-752665

LESLIE DUKE, Employee, Plaintiff,

v.

XYLEM, INC., Employer, BERKSHIRE HATHAWAY HOMESTATE INS. CO., Carrier, Defendants.

Appeal by plaintiff from opinion and award entered 15 March 2021 by the North Carolina Industrial Commission. Heard in the Court of Appeals 9 February 2022.

> *Bryant Duke Paris III PLLC, by Bryant Duke Paris III, for plaintiff-appellant.*
>
> *Teague Campbell Dennis & Gorham, L.L.P., by Heather T. Baker and Lindsay A. Underwood, for defendants-appellees.*

DIETZ, Judge.

¶ 1  Plaintiff Leslie Duke was injured in Virginia while working as a driver for Xylem, Inc.

¶ 2  Xylem's principal place of business is Virginia and Duke's principal place of employment was Virginia. Duke accepted an offer of employment with Xylem by phone from his home in North Carolina and later traveled to Virginia to complete a driver's test, drug screening, and background check as part of an "onboarding"

process.

¶ 3        Duke initially filed his workers' compensation claims in Virginia, but the Virginia Workers' Compensation Commission dismissed some of the claims for failure to respond to discovery requests and dismissed the remaining claims after Duke withdrew them. Duke then filed a workers' compensation claim in the North Carolina Industrial Commission. The Commission dismissed the claim for lack of subject matter jurisdiction.

¶ 4        On appeal, Duke argues that the Commission erred in its jurisdictional analysis because his contract of employment was formed in North Carolina when he accepted Xylem's offer of employment on the phone.

¶ 5        We reject this argument. As explained below, in a strange quirk of our jurisprudence, we are not bound by the Commission's jurisdictional fact finding and must make our own findings based on an independent review of the record. Nevertheless, we agree with the Commission and find that the last act necessary to create a binding employment contract occurred in Virginia, when Duke underwent an "onboarding" process that included a mandatory drug screening and background check that, under company policy, were prerequisites to hiring any prospective employee as a commercial driver. Accordingly, we affirm the Commission's opinion and award.

**Facts and Procedural History**

¶ 6     Xylem, Inc. is a Virginia company that manages and clears vegetation and trees for utility companies and municipalities. Xylem is incorporated in Virginia, headquartered in Norfolk, Virginia, and maintains its fleet operation facility in Wakefield, Virginia. Xylem does not have an office in North Carolina.

¶ 7     Leslie Duke worked as a commercial truck driver for many years. Duke lives in Hertford, North Carolina.

¶ 8     On 6 October 2017, Xylem's vice president, William Hoover, called Duke and invited him to come to the company's Wakefield fleet facility to discuss possible employment. Duke agreed and traveled to Wakefield where the parties discussed Duke's driving experience, and Duke inspected Xylem's trucks and other equipment.

¶ 9     The following week, Hoover called Duke at his home in North Carolina and offered Duke a position with Xylem. The particulars of this job offer are disputed. Duke contends that he accepted the job offer and was immediately hired.

¶ 10    Xylem contends that Duke's employment offer, as with any employee of the company, was contingent on Duke first completing a series of pre-hiring conditions including a driver's test, drug test, and driver's license background check. Both Xylem's president and chief executive officer, Randolph Hoover, and Xylem's operations manager, Matthias Breyer, testified that Xylem's hiring process requires a prospective employee to complete an onboarding process that includes a driver's

test, drug test, and background check before formally becoming an employee of the company.

¶ 11     On 17 October 2017, Duke arrived at Xylem's Wakefield facility and completed the employee onboarding requirements, including authorizing and submitting to drug screening and a background check. The authorization form for the drug screening indicated that it was directed at a "prospective employee." Duke acknowledges that he completed and electronically signed the hiring documentation, including the drug screening authorization, on an electronic device while at the Wakefield facility on 17 October 2017. But Duke maintains that his signature on his written employment documentation is a forgery.

¶ 12     Duke began working as a fleet support employee, driving a truck from the Wakefield, Virginia fleet facility to various job sites, primarily in Virginia. In April 2018, Duke sustained a rotator cuff tear or cervical spine herniation while working in Virginia.

¶ 13     Duke initially filed multiple claims for workers' compensation with the Virginia Workers' Compensation Commission. Duke alleged five different dates of injury in these filings and acknowledged Virginia's jurisdiction as a Virginia employee.

¶ 14     Ultimately, the Virginia Workers' Compensation Commission dismissed portions of Duke's claims for failure to respond to discovery requests and dismissed

the remaining claims after Duke informed the commission that he was withdrawing them.

¶ 15 Duke later filed a workers' compensation claim with the North Carolina Industrial Commission. The Commission dismissed Duke's claim in an opinion and award finding that Duke's contract of employment was formed in Virginia; Xylem's principal place of business was in Virginia; and Duke's principal place of employment was Virginia. Thus, the Commission concluded that it lacked subject matter jurisdiction over Duke's claim. Duke timely appealed.

**Analysis**

¶ 16 Duke argues that the Commission erred by dismissing his workers' compensation claim for lack of subject matter jurisdiction. Specifically, he contends that the Commission erred by finding that the last act necessary to create a contract of employment between Duke and Xylem occurred in Virginia.

¶ 17 When an employee sustains a workplace injury outside the State, the Industrial Commission has subject matter jurisdiction only if one of three statutory criteria apply: (1) the contract of employment was made in this State; (2) the employer's principal place of business is in this State; or (3) the employee's principal place of employment is in this State. N.C. Gen. Stat. § 97-36; *Davis v. Great Coastal Express*, 169 N.C. App. 607, 610 S.E.2d 276 (2005).

¶ 18 On appeal, Duke does not challenge the Commission's findings on the second

and third criteria—that Xylem's principal place of business is Virginia and that Duke's principal place of employment was Virginia. Duke's argument focuses entirely on the first criteria and the Commission's finding that Duke's contract of employment was made in Virginia.

¶ 19        "To determine where a contract for employment was made, the Commission and courts of this state apply the 'last act' test. For a contract to be made in North Carolina, the final act necessary to make it a binding obligation must be done here." *Murray v. Ahlstrom Indus. Holdings, Inc.*, 131 N.C. App. 294, 296, 506 S.E.2d 724, 726 (1998) (citation omitted). The last act of the employment contract is generally the employee's acceptance of employment, but it can also be the completion of other conditions of employment that come after an employee accepts the offer of employment, such as an "orientation, road test, drug test, and physical exam." *Holmes v. Associated Pipe Line Contrs., Inc.*, 251 N.C. App. 742, 750, 795 S.E.2d 671, 676 (2017). The key factor in determining whether these sorts of employment requirements constitute the "last act" is whether there is a possibility that the prospective employee could fail to meet the criteria, thus becoming ineligible for employment. *Id.*

¶ 20        So, for example, in *Holmes*, this Court distinguished a requirement to submit to a mandatory drug screening (a necessary last act) from filling out "routine" employment paperwork (not a necessary last act) because "a prospective employee's

demonstrated willingness to submit to a drug test is more than simply an administrative formality given that—unlike the completion of garden-variety personnel forms—the taking of a drug test carries the risk of failing the test." *Id.* at 751, 795 S.E.2d at 676–77. Because passing that drug test was a precondition for employment at the company, "taking of the drug test was the last act necessary to form a binding employment relationship." *Id.* at 751, 795 S.E.2d at 677.

¶ 21    Here, the Commission found that Duke's "successful completion of the drug test and other onboarding tasks" was a condition precedent to employment. The Commission further found, given that "the successful tests and other processes that took place on 16 and 17 October 2017 were conditions precedent to Plaintiff's employment, the Full Commission finds that the 'last act' necessary to render Plaintiff's employment a binding contract occurred in Virginia."

¶ 22    Ordinarily, this Court's review of fact finding by the Commission is "limited to consideration of whether competent evidence supports the Commission's findings of fact." *Id.* at 747, 795 S.E.2d at 674. Under this standard, when there is competing evidence and the Commission assesses what evidence is more credible or deserves greater weight, this Court must accept the Commission's findings if there is any competent evidence supporting them, even if there is substantial contrary evidence. *Hedrick v. PPG Indus.*, 126 N.C. App. 354, 357, 484 S.E.2d 853, 856 (1997).

¶ 23    But in a strange quirk of our jurisprudence, this rule does not apply to

"jurisdictional facts" found by the Commission. Our Supreme Court recently reaffirmed that "the finding of a jurisdictional fact by the Industrial Commission is not conclusive upon appeal even though there be evidence in the record to support such finding. The reviewing court has the right, and the duty, to make its own independent findings of such jurisdictional facts from its consideration of all the evidence in the record." *Cunningham v. Goodyear Tire & Rubber Co.*, 2022-NCSC-46, ¶ 19.

¶ 24    To be sure, in a case like this one, the rule does not make much sense. It is a long-standing principle of appellate law that appellate courts "cannot find facts." *Pharr v. Atlanta & Charlotte Air Line Ry. Co.*, 132 N.C. 418, 423, 44 S.E. 37, 38 (1903). The Commission, unlike this Court, has the power to hear witness testimony if it chooses, and thus can "observe the witnesses or their demeanor" and make key credibility assessments when they are needed. *Calloway v. Mem'l Mission Hosp.*, 137 N.C. App. 480, 484, 528 S.E.2d 397, 400 (2000). In tracing the history of this jurisdictional rule, it is not clear that it was intended to yield the scenario here— where this Court is forced to review transcripts of witness testimony, assess credibility on a cold appellate record, and make our own fact findings that could contradict the findings of a tribunal capable of calling witnesses and observing their live testimony.

¶ 25    Nevertheless, this is the law and we must follow it. *In re Civil Penalty*, 324

N.C. 373, 384, 379 S.E.2d 30, 37 (1989). Examining the entire record in this case, we conclude that the Commission properly found that the last act necessary to create a binding employment contract occurred in Virginia. Randolph Hoover, Xylem's president and chief executive officer, testified in a deposition that he designed the company's hiring policies and wrote the employee handbook. Under these employment policies, Xylem will not hire a commercial driver until the driver first completes an orientation process that includes a mandatory drug screening and driver's license background check. Hoover testified that, under company policy, prospective employees who have been offered a position cannot be hired until they pass these initial screenings. Another company official, Matthias Breyer, confirmed this testimony.

¶ 26        This testimony also is supported by the Xylem employee handbook, which states that prospective employees must complete the required orientation process before they are fully employed. Finally, when Duke completed and signed the drug screening authorization form in Wakefield, Virginia on 17 October 2017, it indicated that he was a "prospective employee" on the form.

¶ 27        We cannot identify any basis in the record to discredit this testimony and supporting documentation. Moreover, Xylem's employment practice—requiring the drug screening and background check as a prerequisite to employment as a commercial driver—is consistent with the practice at other, similar businesses

examined in our case law. *See, e.g.*, *Taylor v. Howard Transp., Inc.*, 241 N.C. App. 165, 171, 771 S.E.2d 835, 839 (2015); *Holmes*, 251 N.C. App. at 751, 795 S.E.2d at 676. Accordingly, in our *de novo* examination of the entire record, we find that the last act necessary to create a binding employment contract occurred in Virginia and, as a result, the Commission properly concluded that it lacked subject matter jurisdiction over Duke's workers' compensation claim. We therefore affirm the Commission's opinion and award.

## Conclusion

We affirm the Industrial Commission's opinion and award.

AFFIRMED.

Judges MURPHY and JACKSON concur.